# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00384-SCT

*CITIZENS NATIONAL BANK*

*v.*

*DIXIELAND FOREST PRODUCTS, LLC,*
*PACESETTER PROPERTIES, INC., AND ELWIN*
*RANDY POPE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/2004 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DON O. ROGERS |
| ATTORNEYS FOR APPELLEE: | HENRY PALMER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 08/10/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1.     In this unusual case, a bank wore two litigation hats as to one of its customers. It was both a defendant in a lender-liability lawsuit filed by the customer and a judgment creditor as a result of successful litigation against the customer. The first question presented is whether the bank, in its role as judgment creditor, may purchase at a sheriff's execution sale the customer's chose in action, that is, the customer's lawsuit against the bank. If so, then the second question is whether the bank may substitute itself as the plaintiff, and real party in interest, and have the litigation against itself dismissed.

**BACKGROUND FACTS AND PROCEEDINGS**

¶2. Citizens National Bank extended lines of credit totaling $2,500,000 to Elwin Randy Pope and his wholly owned companies, Dixieland Forest Products, Inc. and Pacesetter Properties, Inc., for the purchase of real estate. Pope alleges the bank cancelled these lines of credit without justification, essentially ruining his business. On March 7, 2003, Pope, Pacesetter, and Dixieland[1] filed a Complaint (later amended three times) asserting a variety of lender liability claims against the bank. The final Amended Complaint sought general damages "in an amount in excess of $4,000,000, punitive damages in an amount to be determined to be fair and reasonable by the jury, a reasonable attorney's fee and all costs."

¶3. When the bank filed its Answer, it included counterclaims[2] for debts owed to it by the plaintiffs and a third party. The bank's first counterclaim and third-party complaint was against Clarkdale Development Group, LLC, as the maker of a November 12, 1999, promissory note for $850,025.00, and against Pacesetter and Pope as guarantors.

¶4. The bank's second counterclaim was against Pacesetter as maker of a February 3, 2003, promissory note for $123,852.42, and against Pope as guarantor. During the litigation, the

---

[1] In the third, and final, Amended Complaint, Dixieland was not a named plaintiff. Instead, Dixieland Forest Products, LLC ("Dixie LLC") was named as a plaintiff. This change is relevant to the trial court's disposition of the bank's motion for summary judgment on all claims made by Dixie LLC, discussed *infra*.

[2] Besides the two counterclaims discussed in this opinion, the bank also filed a counterclaim against Dixieland and Pope for an August 10, 2001, note for $35,061.00. Dixieland paid the note on June 30, 2003. Since the note was paid, this counterclaim only appeared in the bank's original Answer and not in its later amended Answers.

bank foreclosed on a deed of trust it held as security for this note. The sale proceeds were then applied to the note, leaving a deficiency of $30,866.31.

¶5. In addressing four separate Motions for Summary Judgment filed by the bank, the trial court denied summary judgment on the lender liability claims filed by Pope and Pacesetter, but granted summary judgment as to those filed by Dixie LLC.[3] As to the counterclaims, the trial court granted the bank summary judgment against Clarkdale and Pope in the amount of $815,083.60, plus specified interest, and against Pacesetter in the amount of $30,866.31, plus specified interest. Thus, the issues left unresolved after the disposition of the bank's summary judgment motions were Pope's and Pacesetter's lender liability claims against the bank and the bank's claims for attorney's fees and collection costs to be determined at a future damages hearing. However, in entering the summary judgments on August 23, 2004, the trial court stated there was "no just reason for delay and this judgment should be made final under Rule 54, MRCP." The plaintiffs did not appeal the summary judgments, and they are therefore now final.

¶6. Although the bank attempted to collect the judgments by enrolling them in the Judgment Roll Books of several Mississippi counties and by sending eighteen writs of garnishment to financial institutions, the bank asserts that its efforts failed to yield payment. When the

---

[3] The trial court found that Dixieland, to whom the bank had extended lines of credit, was not the same entity as Dixie LLC, who was named as a plaintiff in the final Amended Complaint. Therefore, Dixie LLC had no cause of action against the bank.

plaintiffs tendered two checks to the bank to bring current their indebtedness,[4] the bank returned the checks, stating that the amounts did not cure the default.

¶7.    On September 20, 2004, at the request of the bank as judgment creditor, the Lauderdale Country Circuit Court Clerk issued writs of execution directed to the sheriff to levy on Pacesetter's and Pope's choses in action[5] filed in the Lauderdale County Circuit Court, cause number 03-CV-030-B.  The writs were served, and on October 4, 2004, the choses in action were sold for cash at auction by the sheriff at the front door of the Lauderdale County Courthouse.  The plaintiffs neither attended nor bid at the sale.  The bank, as the highest bidder, made the following purchases:

(1)    The ownership interest (including stock) of Pope in Dixieland, for $1,000.00.

(2)    The claims and choses in action of Pacesetter against the bank, including but not limited to those claims made in the lawsuit pending in the Circuit Court, assigned cause number 03-CV-030-B, for $10,000.

(3)    The claims and choses in action of Pope against the bank, including but not limited to those claims made in the lawsuit pending in the Circuit Court, assigned cause number 03-CV-030-B, for $40,000.

---

[4] Plaintiffs attempted to pay off a Clarkdale note with a check for $5,088.39 and a Dixieland note with a check for $31,911.28.

[5] This Court has previously defined the term "chose in action" as follows:

A 'chose in action' means, literally, a thing in action, and is the right of bringing an action, or a right to recover a debt or money, or a right of proceeding in a court of law to procure the payment of a sum of money, or a right to recover a personal chattel or a sum of money by action, or, as it is defined by statute, a right to recover money or personal property by a judicial proceeding.

***Garrett v. Gay***, 394 So. 2d 321, 322 (Miss. 1981) (citing 73 C.J.S. *Property* § 9 (1951)).

4

(4)     The ownership interest (including stock) of Pope in Pacesetter, for $15,000.

(5)     The ownership interest (including stock) of Pope in Dixie LLC, for $25,000.

¶8.     After receiving a total amount of $91,000 for the successful bids, the sheriff executed conveyances to the bank (as successful purchaser) and paid the money received to the bank (as judgment creditor). Those conveyances were filed and indexed by the Circuit Clerk.

¶9.     After the execution sale, Pacesetter and Pope subtracted the sale proceeds credit of $91,000 and paid the bank the balance of the final judgments, including attorney's fees and collection costs.   Fully satisfied of its claims, the bank released all pending garnishments, cancelled the enrolled judgment liens, and released the other collateral it held.

¶10.    The bank then filed a motion in the lender liability suit (which it had purchased) to substitute itself as the party plaintiff and to have the suit dismissed.   The bank argued that because it owned all of the remaining claims in the suit, it could rightfully dismiss them.   The plaintiffs claimed, however, that the execution sale did not attach to their choses in action, particularly their claim for punitive damages.   On November 30, 2004, the trial court denied the bank's motion.

¶11.    On December 2, 2004, we released our decision in *Maranatha Faith Center, Inc. v. Colonial Trust Co.*, 904 So. 2d 1004 (Miss. 2004), which affirmed a Lowndes County Sheriff's execution sale of a chose in action.   Based on this ruling, the bank filed a Motion to Reconsider, which the trial court heard on January 24, 2005, but denied, stating that

5

*Maranatha* was too factually dissimilar to be applicable to the instant case. On February 22, 2005, the bank filed its Motion for Permission to Appeal Interlocutory Order, which this Court granted. See M.R.A.P. 5.

**DISCUSSION**

¶12. The bank presents this Court with two specific issues for consideration: (1) whether the trial court erred in denying its Motion to Substitute Party Plaintiffs; and (2) whether the trial court erred in denying its Motion to Dismiss the claims in cause number 03-CV-030-B.

> **I.** **Whether the trial court erred in denying the bank's Motion to Substitute Party Plaintiffs.**

¶13. A motion to substitute under Mississippi Rule of Civil Procedure 25(c) is generally discretionary in nature. When we review a decision that is within the trial court's discretion, we first ask "if the trial court below applied the correct legal standard. If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made." *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 948 (Miss. 2000) (citing *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)). We will affirm a trial court's decision "unless there is a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors.'" *Amiker*, 796 So. 2d at 948 (quoting *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss. 1990)). For issues of law, though, this Court employs de novo review. *State Indus., Inc. v. Hodges*, 919 So. 2d 943, 944 (Miss. 2006).

> A. *Maranatha Faith Center, Inc. v. Colonial Trust Co.*

6

¶14. The Plaintiffs cite a single authority in their brief, *Maranatha*, so a discussion of that case is an appropriate starting point. In February 2003, the Chancery Court of Lowndes County entered a final judgment against a debtor, Maranatha, and in favor of its creditor, Colonial Trust, for $876,753.08. *Maranatha*, 904 So. 2d at 1005. After the judgment went unsatisfied for several months, Colonial Trust levied execution on Maranatha's chose in action against another company, styled *Maranatha Faith Center, Inc. v. Kerr-McGee Corp.*[6] *Id.* Maranatha moved to quash the writ and stay the execution, but the trial court denied these motions. *Id.*

¶15. The issue before this Court, one of first impression, was "[w]hether an action for unliquidated damages can be executed upon by a judgment creditor and subsequently sold at public auction, possibly to a third party." *Id.* Maranatha argued that a writ of execution could only be applied to the proceeds of a lawsuit, not to the lawsuit itself. *Id.* at 1006. Additionally, Maranatha claimed that a writ of execution could not be applied to intangible property, like a pending lawsuit. *Id.*

¶16. The Court looked to Mississippi Code Annotated Section 11-7-7 for guidance, which provides, in part, "[a]ny chose in action or any interest therein, after suit has been filed thereon, may be *sold or assigned the same as other property* . . . ." *Id.* (quoting Miss. Code Ann. § 11-7-7 (Rev. 2004) (emphasis in original)). We concluded the statute was reasonably

---

[6] This chose in action involved Maranatha's claims against a company, Kerr-McGee, for trespass and contamination of real property by hazardous materials.

7

interpreted as meaning a chose in action may be treated the same as other personal property. *Maranatha*, 904 So. 2d at 1007.

¶17. The Court also considered Section 13-3-135, which provides, "[t]he purchaser of any chose in action, stock, share, interest, judgment, or decree of the defendant, *sold under execution or attachment*, shall become the owner thereof, in the same manner as if it had been regularly assigned to him by the defendant." *Id.* (quoting Miss. Code Ann. § 13-3-135 (Rev. 2002) (emphasis in original)). We found that "[i]mplicit in § 13-3-135 is that a chose in action may be sold under execution." *Maranatha*, 904 So. 2d at 1007.

¶18. In dicta, we noted that all three parties involved in the case had an interest in purchasing the chose in action. *Id.* at 1009. Specifically, "Kerr McGee would be interested in buying the suit against it. Second, Maranatha would be interested in reacquiring the suit based on the fact that it [believed] it [was] worth much more [than] the judgment against it which [was then] being executed. Third, Colonial Trust could buy the suit itself." *Id.* at 1010 n.9.

¶19. In summarizing why a chose in action could be sold under execution, we noted:

> [A chose in action] is property. It is capable of being transferred. It is capable of being converted into a judgment which is subject to execution. It is an asset of the judgment debtor, and why should not his assets, whatever their nature, be taken to satisfy a judgment? We cannot see any logical reason why such property should not be levied on.

*Id.* at 1009 (quoting *Johnson v. Dahlquist*, 225 P. 817, 818 (Wash. 1924)). We held that a chose in action is subject to a writ of execution. Colonial Trust, as judgment creditor, could levy upon Maranatha's chose in action against Kerr-McGee "with such levy not to exceed the

8

amount to which Colonial is now entitled pursuant to the chancery court judgment heretofore rendered in its favor against Maranatha." *Maranatha*, 904 So. 2d at 1010.

> B.     *Whether the choses in action are subject to the writ of execution issued by the circuit court clerk on the enrolled final judgments in favor of the bank.*

¶20.    Under *Maranatha* and the statutes cited therein, a chose in action is personal property subject to a writ of execution.[7]  *Id.*   The plaintiffs argue a trial is necessary to determine the value of their claims against the bank, and an execution before a trial circumvents their rights. Notably, the same "proceeds" argument was made, and rejected, in *Maranatha*.  *Id.* at 1006. Additionally, the relevant statutes do not require "valuation by trial."  The Legislature could have excepted choses in action from execution, but it did not, and it is not our role to create such exceptions in an unambiguous statutory scheme.   As with any other personal property, a chose in action's value – for purposes of levy and execution – is determined at a sheriff's execution sale.  See *id.* at 1007; Miss. Code Ann. § 11-7-7 (chose in action may be sold in the same manner as other personal property); Miss. Code Ann § 13-3-161 (personal property may be sold under execution); Miss. Code Ann. § 13-3-135 (a chose in action may be sold under execution); Miss. Code Ann. § 13-3-169 (property sold at an execution sale must go to the highest bidder).

---

[7] Plaintiffs offer no argument to the bank's assertion that the claims made in 03-CV-030-B are "choses in action." *See* *Yarbrough v. State*, 911 So. 2d 951, 955 (Miss. 2005) (State failed to offer any opposition, so the Court found that it had "conceded this element as being established.").

9

C.  *Whether the bank may initiate a sheriff's execution sale against Pacesetter's and Pope's choses in action (their 03-CV-030-B lawsuit claims).*

¶21. The trial court entered final judgments against the plaintiffs and in favor of the bank for $815,083.60 and $30,866.31.[8] The trial court also found "there is no just reason for delay" in the bank's collection of the judgments. The judgment debtor plaintiffs did not appeal the judgments, and they became final. Thus, the bank's right to collect the judgments is not now subject to attack.

¶22. Under both clear statutory language and this Court's precedent, the plaintiffs' lawsuits were choses in action and subject to a writ of execution, and the procedure selected by the bank, that is, the initiation of a sheriff's execution sale against the plaintiffs' choses in action, was entirely appropriate. Mississippi Code Annotated Section 13-3-111, which provides for execution on a judgment debtor's assets to collect a final judgment, states in part, "[t]he clerks of all courts of law or equity . . . *shall*, at the request and cost of the owner of the judgment or decree or his attorney, issue executions on all judgments and decrees rendered therein . . . ." (Emphasis added).[9]

¶23. The key consideration here is the finality of the judgments against the plaintiffs, rendering them judgment debtors. The bank correctly notes, "[s]ince it is the finality of the judgment that allows execution, it would make no difference if the bank had obtained its

_____

[8] Plaintiffs offer no argument or opposition to the bank's assertion that the $30,860.31 judgment and $815,083.60 judgment were final. *See* **Yarbrough**, 911 So.2d at 955.

[9] Plaintiffs offer no argument or opposition to the bank's assertion that it had the right to pursue collection of the final judgments by execution. *See* **Yarbrough**, 911 So. 2d at 955.

judgments in a separate court proceeding against the Plaintiffs . . . [or] if the bank had bought the two judgments from [a] third party." Consistent availability of the execution option is important. Under the present circumstances, the bank properly initiated a sheriff's execution sale against the plaintiffs' choses in action.

D. *Whether the bank may purchase those choses in action at a sheriff's execution sale if it is the highest bidder.*

¶24. The Mississippi Code sets forth several requirements for a sheriff's execution sale. Section 13-3-161 requires the execution sale to be held at the county courthouse. Section 13-3-165 prohibits the execution sale from occurring on a Sunday and requires at least ten days of pre-sale advertising. Finally, Section 13-3-169 gives the time of day a sale can be conducted and states, "[a]ll such sales shall be by auction to the highest bidder for cash, and only so much of the property levied on shall be sold as will satisfy the execution and costs." It is important to note that the plaintiffs do not contend the sheriff's execution sale was improper or unfair.

¶25. The sale was held at the door to the Lauderdale County Courthouse at 11:00 a.m., on a Monday, fourteen days after the county clerk issued the writs of execution. The bank, as the highest bidder, gave the sheriff $91,000. Each element of the sale complied with the statutory requirements. We have no specific information about the sale's advertising, but again, the plaintiffs never argue the execution sale was unfair.

¶26. The plaintiffs quote the portion of our *Maranatha* holding that states Colonial Trust "may by writ of execution levy upon [Maranatha's] chose in action in the pending court action

11

against Kerr-McGee, *with such levy not to exceed the amount to which Colonial is now entitled*." **Maranatha**, 904 So. 2d at 1010 (emphasis supplied). Although the plaintiffs do not articulate a clear reason for emphasizing the above language, it appears the plaintiffs believe that, because their evaluation of the lawsuits is $4,000,000, an amount which far exceeds the amount owed to the bank, the sheriff could not conduct a valid sale and pass title to the lawsuits for $91,000. Stated another way, the plaintiffs contend the statutory language prohibits the execution sale of their 03-CV-030-B lawsuits because their value far exceeded the amount of the bank's judgments. Thus, the plaintiffs argue, the sheriff must have sold more property than was necessary to satisfy the bank's judgments. The plaintiffs provide us no authority for this assertion. For purposes of the execution and sale, the value of the lawsuits was set by the highest bid. The plaintiffs' subjective valuation is irrelevant.

¶27. In **Maranatha**, the judgment debtor argued its lawsuits against Kerr-McGee were worth $15,000,000. **Id.** at 1005 n.2. The judgment against Maranatha in favor of Colonial Trust was approximately $877,000. **Id.** at 1005. The multi-million dollar difference between Maranatha's valuation of its pending claims and the judgment against it did not prevent execution in that case, and it does not prevent execution here.

¶28. The language in **Maranatha** that "such levy [is] not to exceed the amount to which Colonial is now entitled," **id.** at 1010, accurately tracks the language of Mississippi Code Annotated Section 13-3-169, which states, "only so much of the property levied on shall be sold as will satisfy the execution and costs." Here, the sheriff's execution sale yielded

12

$91,000, an amount far less than the $845,949.91 total judgment to which the bank was entitled.

¶29.     No statutory exception exists to prevent a judgment creditor or a defendant from bidding at the sale of a chose in action.   In dicta in *Maranatha*, this Court envisioned the possibility that a defendant in a lawsuit (chose in action) might be the purchaser at an execution sale.   904 So. 2d at 1010 n.9.   Here, the bank is analogous to the defendant, Kerr-McGee.   Under the scenario discussed in *Maranatha*, the bank, as the highest bidder, was eligible to purchase the plaintiffs' choses in action at the sheriff's sale.

¶30.     The plaintiffs' primary argument centers on the bank's "sham purchase" of their choses in action for $91,000, because the $91,000 bid "was a figure very close to the unwarranted attorneys (sic) fees and collection costs that [the bank] required of Pope to satisfy its Judgment."   According to the plaintiffs' calculations, they were required to pay $88,327.28 in attorney's fees and collection costs in order to bring current their debts.   The plaintiffs argue they tried to pay the debts less these fees, but the bank refused the payment.   Finally, the plaintiffs argue the bank could not ask for any fees because the trial court specifically reserved the issue of attorney's fees for a future damages hearing.

¶31.     The plaintiffs' calculations can only be found in their Brief, as they were not derived from any document in the record.   Needless to say, their figures are dubious at best.   The plaintiffs calculate the debt owed on the Clarkdale note as of September 28, 2004, as

13

$846,322.15, and on the Pacesetter note as of September 27, 2004,[10] as $31,973.01. Thus, the total judgment amount owed was $878,295.16. The plaintiffs then obtain the $845,622.94 figure, allegedly the bank's demand, from a letter not contained in the record. This amount apparently represented the amount owed by the plaintiffs on October 5, 2004, after the $91,000 execution sale credit. The plaintiffs then added the credit amount and bank demand together to get $936,622.94. After subtracting the amount they felt they owed - $878,295.16 - the plaintiffs arrived at $88,327.78 in improper fees and costs assessed by the bank. Since this amount is close to the bank's $91,000 bid for their choses in action, the plaintiffs argue the sale was merely pretense to force them to pay more than necessary to bring current their debts.

¶32. This argument is meritless for a number of reasons. First, the calculations are all based on different dates - September 27, September 28, and October 5. Second, even assuming the plaintiffs' method of calculation was correct, the amount of "improper" fees assessed by the bank would be $58,327.78,[11] a figure not nearly as coincidentally close to the $91,000 bid, and hardly evidence of a "sham purchase."

¶33. Poor math aside, the plaintiffs also omit several relevant facts regarding their payoff and the documents allegedly supporting their calculations. The bank's letter to the plaintiffs on October 25, 2004 (from which the plaintiffs take their $845,622.94 bank demand figure) concerns the payoff of three loans, not just the two judgment loans. Additionally, the letter notes that the plaintiffs paid off the judgments as well as a number of unspecified deeds of

---

[10] In arriving at this figure, the plaintiffs evidently forgot that 2004 was a leap year.

[11] $936,622.94 - $878,295.16 = $58,327.78 (not $88,327.78 as the plaintiffs claim).

14

trust. According to the bank, the calculation relied on by the plaintiffs also included the cancellation of five deeds of trust and two UCC-1 filings.

¶34. The plaintiffs never asked the trial court for assistance in determining their payoff. In fact, the plaintiffs willingly paid all of their debts due to the bank, and only now do they complain about the amount. The plaintiffs claim they tendered an amount that would have brought their debts current, but the bank refused their offer. The trial court found the plaintiffs' offer could not have cured the default, so the bank properly rejected it. The trial court also stated, "[j]ust picking an amount that the debtor thinks is correct and offering it as a tender to bring the note current is not an acceptable practice."

¶35. The plaintiffs cite no authority to support any of their arguments. *Maranatha* actually supports the bank's contention that it could purchase the choses in action at the properly conducted sheriff's execution sale. Parties are required to cite relevant authority or face imposition of a procedural bar. *See Williams v. State*, 708 So. 2d 1358, 1361 (Miss. 1998); *Cook v. Mardi Gras Casino Corp.*, 697 So. 2d 378, 383 (Miss. 1997). The plaintiffs concede the execution sale was fair. Their only argument concerns the closeness of the $91,000 purchase price with the $88,327.78 they claim to have paid in improper fees and costs. Bald, unsupported assertions simply cannot invalidate a properly conducted sheriff's execution sale. As such, the bank, as the highest bidder, could purchase the plaintiffs' choses in action.

> E. *Whether the bank, as purchaser at the sheriff's execution sale, becomes the owner of Pacesetter's and Pope's 03-CV-030-B choses in action.*

¶36.   According to Mississippi Code Annotated Section 13-3-135, "[t]he *purchaser of any chose in action*, stock, share, interest, judgment, or decree of the defendant, *sold under execution* or attachment, *shall become the owner thereof*, in the same manner as if it had been regularly assigned to him by the defendant." (Emphasis added).   We relied on this statute in *Maranatha* and held that the purchaser of a chose in action at a sheriff's execution sale has the right of ownership over the chose.   904 So. 2d at 1007.   Therefore, under both statutory and case law, the bank became the owner of the plaintiffs' lawsuits (choses in action) when it purchased them at the sheriff's execution sale.

        F.       *Whether the bank, as owner of the choses in action, may substitute itself as the sole plaintiff and dismiss the 03-CV-030-B claims against it.*

¶37.   M.R.C.P. 17 states, "[e]very action shall be prosecuted in the name of the real party in interest."   As the owner of the 03-CV-030-B choses in action, the bank has the only real interest remaining in those claims.   The plaintiffs no longer have a stake in the unresolved lender liability claims asserted against the bank.   M.R.C.P. 25(c)[12] concerns party substitution involving a transfer of interest, and states, "[i]n a case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

---

[12] In its Motion to Substitute Party Plaintiffs, the bank mistakenly cites M.R.C.P. 25(a) in support. Rule 25(a) concerns substitution upon a party's death, so it is not relevant to this case. However, Rule 25(c), concerning substitution based on a transfer of interests, is applicable.

16

¶38. Although Rule 25(c) transfers are generally permissive, in this case, the execution sale and purchase of the lawsuits left only one party, the bank, with *any* interest in the litigation. Because Rule 17 allows only the real party in interest to prosecute its claims, the trial court abused its discretion by refusing to substitute the bank as plaintiff in the 03-CV-030-B actions.

¶39. To support their argument that the bank should not be allowed to substitute itself as party plaintiff, the plaintiffs present a hypothetical to demonstrate the inequities they perceive would result if the bank's motion is granted. However, the plaintiffs never cite any authority at any point in their entire argument as to why substitution should be prohibited. *See Williams*, 708 So 2d at 1361 (parties must cite relevant authority to support their positions); *Cook*, 697 So. 2d at 383 (same). Even if application of the law might be inequitable in rare cases, there are no exceptions in the relevant statutes, rules, or cases that would prevent the bank from substituting itself as plaintiff in the choses in action it purchased. This Court is without authority to invalidate statutes simply because we find they may occasionally engender what we consider to be inequitable results. Such considerations are for the Legislature. We conclude the trial court erred in denying the bank's Motion to Substitute Party Plaintiffs.

## II. Whether the trial court erred by not dismissing the case against the bank.

¶40. The bank sought dismissal of the 03-CV-030-B claims because it was the only party in interest remaining in the case. The bank moved for dismissal under M.R.C.P. 41(a)(2), which states, in relevant part, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." This Court

17

reviews a denial of a Rule 41(a)(2) motion to dismiss under an abuse of discretion standard. *BellSouth Pers. Comm'n LLC v. Bd. of Supervisors*, 912 So. 2d 436, 440 (Miss. 2005).

¶41. Here, the trial court found our *Maranatha* decision did not apply to this case because *Maranatha* involved three parties, while this case involved only two. The trial court failed to address any of the statutory authority cited in *Maranatha*, which was directly applicable to this case. Beyond the number of parties involved, *Maranatha* is factually and procedurally on point with this case. Because the trial court misapprehended and misapplied the law, its denial of the bank's Motion to Dismiss was an abuse of discretion.

## CONCLUSION

¶42. Statutory law permits the bank to levy upon its judgment debtors' choses in action in order to satisfy a final judgment in its favor. Significantly, the plaintiffs never appealed the final judgment. The plaintiffs' choses in action were sold to the bank, as the highest bidder, at a properly conducted sheriff's execution sale. The plaintiffs did not attend or bid at the sale, and they never claimed that the sale was improperly conducted or unfair. The bank became the owner of those choses in action, and the plaintiffs willingly paid the remainder of the judgments against them less the set-off from the sale. As the owner of the claims and only remaining party in interest, the bank had the right to be substituted as the party plaintiff in the 03-CV-030-B action. Finally, as the proper plaintiff in a lawsuit against itself, the bank had every right to dismiss those claims, since further litigation under such circumstances would have been futile and a waste of judicial resources. We find the trial court erred in denying the

18

bank's Motion to Substitute Party Plaintiffs and Dismiss Complaint. Therefore, we reverse the trial court's judgment and render judgment here substituting Citizens National Bank as the plaintiff and finally dismissing with prejudice all remaining unresolved claims in this case on the bank's motion under M.R.C.P. 41(a)(2).

¶43. **REVERSED AND RENDERED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. GRAVES, J., NOT PARTICIPATING.**