FILED
United States Court of Appeals
Tenth Circuit

July 23, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

AMPHIBIOUS PARTNERS LLC,

    Plaintiff - Appellee,

v.

DONALD R. REDMAN;
GWENDOLYN D. REDMAN,

    Defendants -Third-Party-
    Plaintiffs - Appellants,

v.

DAVID E. BEAGLE, Individually;
WILLIAM A. GAVIN,
Individually; RICHARD A.
MASON, Individually; ERIC
MUNOZ, Individually; A. LOUIS
STEPLOCK, Jr., Individually,

    Third-Party-Defendants -
    Appellees.

No. 08-8072
(D.C. No. 1:06-CV-00031-CAB)
(D. Wyo.)

ORDER AND JUDGMENT[*]

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Donald R. and Gwendolyn D. Redman ("the Redmans") appeal from a post-judgment order transferring their interest as plaintiffs in a Florida state court case to Amphibious Partners, LLC ("APL").  We conclude that the district court's outright transfer of a chose in action alleging damages far in excess of the value of the judgment at issue was an abuse of discretion.  Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

**I**

This appeal is the latest installment in a long-running dispute among investors in a company known as Trolley Boats, LLC ("Trolley Boats").  We previously considered an appeal of the district court's judgment and summarized the background facts as follows:

> This case arises out of a loan obtained from Hilltop National Bank by Trolley Boats, LLC, a company owned 50% by Defendants, Donald and Gwendolyn Redman, and 50% by Plaintiff, Amphibious Partners, LLC.
> . . . .
> In 2003, Trolley Boats obtained a $100,000 loan from Hilltop Bank for operating expenses.  Trolley Boats' promissory note was secured by individual guaranties executed by Defendants and five of the six individual members of Amphibious Partners.  After Trolley Boats defaulted on the loan in September 2005, Plaintiff requested that Defendants pay 50% of the amount due, but Defendants refused.  Plaintiff eventually paid Hilltop Bank the outstanding amount due on the note and in turn received an assignment of the note and guaranties.
> . . . . Plaintiff, as assignee of the promissory note and guaranties, sought payment of the full amount of the note as well as interest and attorney fees.
> . . . .
> After taking the matter under advisement, the court issued its findings of fact and conclusions of law.  The court found that Defendants improperly excluded Plaintiff from the Trolley Boats manufacturing facility and retained funds earned by the business.  The court found that Defendants' actions destroyed Plaintiff's ability to benefit from the Hilltop

-2-

> Bank loan, while Defendants continued to benefit from the loan by operating the Trolley Boats business and selling boats manufactured at the Trolley Boats facility. The court concluded that, because Defendants received the entire benefit from the loan, they were liable in contribution to Plaintiff for the entire amount of the debt. The court therefore entered judgment against Defendants for the full amount paid by Plaintiff to Hilltop Bank, plus post-judgment interest.

Amphibious Partners, LLC v. Redman, 534 F.3d 1357, 1358-60 (10th Cir. 2008) (citations, quotations, and footnote omitted). We affirmed the district court's judgment of $112,311.11 plus post-judgment interest in favor of APL. Id. at 1362.

Following our affirmance, APL returned to the district court and filed a Motion for Supplementary Proceedings to Apply Judgment Debtor's Property in Satisfaction of Judgment. APL sought to obtain the Redmans' chose in action: their interest as plaintiffs in a pending Florida state case against APL principals Louis Steplock and David Beagle (the "Florida Litigation"). The Redmans filed the Florida Litigation in October 2004, seeking $2.6 million in damages based on Beagle and Steplock's alleged misconduct. Just six days after APL filed its motion, and before the Redmans responded, the district court granted the motion.

The Redmans moved for reconsideration under Fed. R. Civ. P. 59 and 60. After a hearing on that motion, the district court denied relief. The Redmans timely appealed the court's post-judgment determination. While the appeal was pending, APL successfully moved to be substituted as plaintiff in the Florida Litigation based on the district court's order transferring the chose, and voluntarily dismissed that case.

**II**

We must first consider APL's motion to dismiss this appeal as moot. "Because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction, the court must determine whether a case is moot before proceeding to the merits." Citizens for Responsible Gov't State PAC v. Davidson, 236 F.3d 1174, 1181-82 (10th Cir. 2000) (quotation omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (quotation omitted). "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." Kan. Judicial Review v. Stout, 562 F.3d 1240, 1246 (10th Cir. 2009) (quotation and alterations omitted).

APL contends this appeal is moot because the Florida Litigation has been dismissed with prejudice. Based on that dismissal, APL argues that a favorable disposition from this court would have no practical effect because the Redmans cannot resurrect their state claims regardless of the outcome here. We disagree.

Under Florida law, a "court may relieve a party . . . from a final judgment, decree, order, or proceeding . . . [because] a prior judgment or decree upon which it is based has been reversed or otherwise vacated." Fla. R. Civ. P. 1.540(b)(5); see also Austin v. B.J. Apparel Corp., 523 So. 2d 675, 677 (Fla. App. 1988) ("[U]nder Rule 1.540(b)(5), Fla. R. Civ. P., limited jurisdiction is conferred upon courts to grant relief from judgments based upon a prior judgment which has been reversed on appeal."). Because the dismissal of

-4-

the Florida Litigation was based on the post-judgment order under review, reversal of the latter by this court would allow the Redmans to seek relief in Florida state court under Fla. R. Civ. P. 1.540(b)(5). In other words, effective relief for the Redmans remains attainable. See Kan. Judicial Review, 562 F.3d at 1246.

APL asserts that the Redmans have waived any challenge to the dismissal of the Florida Litigation by failing to file a supersedeas bond to stay the matter. It cites RMA Ventures California v. SunAmerica Life Insurance Co., 576 F.3d 1070 (10th Cir. 2009), for the proposition that this failure precludes a subsequent appeal. But RMA Ventures California concerned the seizure of the right to prosecute the very appeal at issue, not of a separate chose in action. See id. at 1072. Because the appellee had purchased the appellant's rights in the case at an execution sale and moved to dismiss the appeal, we concluded that the appellant no longer possessed an interest in the case. Id. at 1075-76. The Redmans have suffered no such forfeiture. Although they may have lost their right to prosecute the Florida Litigation, they are clearly the proper parties to pursue this appeal.

APL further argues that an appeal is generally mooted when the appellant satisfies judgment. See Out of Line Sports, Inc. v. Rollerblade, Inc., 213 F.3d 500, 502 (10th Cir. 2000). However, satisfaction of a judgment only moots an appeal if the judgment debtor "acted voluntarily." Id. This rule does not apply when judgment is satisfied "because of the actual or implied compulsion of judicial power." Id. The satisfaction at issue plainly falls into the latter category: Judgment was satisfied when the court substituted APL as plaintiff in the Florida Litigation. The Redmans did nothing.

Because this court can provide effective relief to the Redmans by reversing the district court's order, this appeal is not moot.

## III

Pursuant to Fed. R. Civ P. 69, post-judgment proceedings in aid of execution are governed by the law of the forum state unless a federal statute applies. The parties agree that Wyo. Stat. § 1-17-401 controls this dispute. That statute provides:

> Any equitable interests the judgment debtor has as mortgagor, mortgagee or otherwise, or any interest he has in any joint stock company, money contract, <u>claim or chose in action due or to become due to him</u>, or in any judgment or order, or any money, goods or effects which he has in the possession of any person, which has not been levied upon and sold under execution is subject to the payment of the judgment by action.

<u>Id.</u> (emphasis added).

We review a district court's interpretation of state law de novo. <u>See</u> <u>Enfield ex rel. Enfield v. A.B. Chance Co.</u>, 228 F.3d 1245, 1247 (10th Cir. 2000). Post-judgment proceedings in aid of execution are equitable in nature. <u>See</u> <u>Burnett v. Steeley</u>, 190 P.3d 132, 137 (Wyo. 2008). "We review the district court's exercise of its equitable powers for abuse of discretion." <u>Clark v. State Farm Mut. Auto. Ins. Co.</u>, 433 F.3d 703, 709 (10th Cir. 2005).

Because there is no Wyoming case law interpreting § 1-17-401, both parties cite to precedent from other jurisdictions. <u>See</u> <u>Woodward v. Hainey</u>, 564 P.2d 844, 845-46 (Wyo. 1981) (cases from other jurisdictions interpreting similar statutory language are highly persuasive). The Redmans rely heavily on <u>Lakeshore Motor Freight v. Glenway Industries, Inc.</u>, 440 N.E.2d 567 (Ohio Ct. App. 1981), which considered an Ohio statute

-6-

that similarly permits a judgment creditor to seek a "claim, or chose in action, due or to become due to" the judgment debtor.

In <u>Lakeshore</u>, a trial court transferred from a judgment debtor to a judgment creditor a chose in action alleging $2 million in damages to satisfy a judgment of just over $8,000. 440 N.E.2d at 568. The Ohio Court of Appeals overturned the transfer, holding that, "while the anticipated proceeds of a judgment debtor's chose in action may fairly be subjected to an equitable lien, since such property represents a claim 'to become due' under [the statute], <u>the right to prosecute the suit</u> should not be subjected to the same encumbrance." <u>Id.</u> at 570. The holding was founded primarily in equity: "[I]t is clearly inequitable to permit a creditor who is owed the relatively minor sum of $8,193.80 to prosecute a suit of the debtor for two million dollars, especially where, as here, there is no allegation that the debtor has failed to prosecute faithfully its chose in action." <u>Id.</u> Accordingly, the court held that a "trial court does not have the authority to allow the judgment creditor to usurp prosecution of a chose in action belonging to the judgment debtor, but must instead limit any order to the debtor's equitable interest, i.e., the potential proceeds, in any such action." <u>Id.</u> at 569 (italics omitted); <u>see also</u> <u>Olive Branch Holdings v. Smith Tech. Dev., LLC</u>, 909 N.E.2d 671, 683 (Ohio Ct. App. 2009) ("Although the [<u>Lakeshore</u>] court held that the [statutory remedy] did not extend to the right to prosecute the breach of contract action, it subjected the anticipated proceeds of the action to an equitable lien.").

The Redmans urge us to adopt <u>Lakeshore</u> and hold that a chose in action is never subject to Wyo. Stat. § 1-17-401 as a matter of law. We decline to make such a sweeping

pronouncement given that the statutory language plainly lists choses in action as property "subject to the payment of the judgment by action." Id. Another provision of Wyoming law states that "the court may order any property of a judgment debtor not exempt by law[] to be applied towards the satisfaction of a judgment." Wyo. Stat. § 1-17-411. Nevertheless, we agree that the district court abused its discretion by transferring the chose directly to APL.

We base our conclusion in large part on the extraordinary difficulty in estimating the value of a chose in action. "Requiring a district court to predict the amount of damages that may be awarded in a pending lawsuit and then to discount that amount by its estimate of the chance of a liability verdict is . . . equivalent to flipping a coin and is no better than gazing into a crystal ball." Estate of Jelke v. Comm'r, 507 F.3d 1317, 1339 (11th Cir. 2007) (Carnes, J., dissenting); see also Staffend v. Lake Cent. Airlines, Inc., 47 F.R.D. 218, 220 (N.D. Ohio 1969) ("The value of any lawsuit for settlement purposes varies from time to time and often from day to day."). Given this difficulty, the simple transfer of a lawsuit risks granting the judgment creditor a windfall. In this case, the Redmans contend their chose is worth $2.6 million, yet it was extinguished to satisfy a judgment of less than one twentieth of that total.

APL strenuously argues that the equities of this case support the district court's decision. It cites to findings in this case and a related federal district court case that the Redmans took possession of the Trolley Boats facility, improperly excluded APL from that facility, incurred substantial liabilities on behalf of Trolley Boats, and retained Trolley Boats' revenue. But alleged misconduct by the Redmans does not entitle APL to

-8-

recover even a penny more than the value of its judgment: $112,311.11 (plus post-judgment interest). Even assuming that the equities favor APL entirely, a district court may not simply multiply a plaintiff's recovery in post-judgment proceedings.

APL counters that the federal district court's findings demonstrate that the Florida Litigation is frivolous and faults the Redmans for declining to present evidence on the value of the suit at the Rule 59/60 hearing. Yet the Redmans are correct that a short hearing on a motion to reconsider a post-judgment order is no substitute for a full-blown trial. "Neither attorneys, nor trial judges, nor jurors, nor clients can know the results of litigation until after the deliberations of an unbiased trier of fact. The value, if any, of [a] lawsuit is determined by the trier of fact solely on the law and the facts admitted into evidence." Lawson v. Cagle, 504 So. 2d 226, 227 (Ala. 1987). Although the district court ostensibly predicted that approximately half of the Redmans' claimed damages would be barred by issue or claim preclusion, and suggested that the Redmans were unlikely to prevail on their claim of lost value in Trolley Boats, we cannot simply ignore the fact that the Florida Litigation was scheduled for a two-week trial in October 2008. Were the Redmans' claims frivolous or otherwise barred, APL had ample opportunity to seek dismissal from the Florida court in the nearly four years the case had been pending. The settlement value of even an unmeritorious case that has survived long enough to obtain a two-week trial setting is not inconsequential; the most frivolous claims may be worth something close to the value of APL's judgment in light of the costs and fees a defendant would incur over the course of a lengthy trial.

A federal district court is generally ill-positioned to pass on the value of a pending state lawsuit, but the risk of excessive seizure is particularly high when, as in this case, a judgment creditor seeks to obtain a chose it has no intention of litigating. In Associated Ready Mix, Inc. v. Douglas, 843 S.W.2d 758 (Tex. App. 1992), a Texas Court of Appeals noted the unique problems that arise when a judgment creditor seeks to attach such claims. Although "a judgment creditor [has] the same interest in pursuing [claims against a third party] to maximum value as the judgment debtor," the assignment of a claim that the judgment creditor will not litigate "preclude[s] a determination of the merit and value of a party's claim." Id. at 762. Because such claims "may be worthless or they may be worth an amount considerably in excess of [the] judgment," id., the appellate court reversed the trial court's assignment of such a claim as an abuse of discretion, id. at 762-63; see also Commerce Sav. Ass'n v. Welch, 783 S.W.2d 668, 671 (Tex. App. 1989) (rejecting judgment creditor's attempt to "employ the court's post-judgment power for the purposes of unilaterally dismissing substantial contested and unliquidated claims between the parties"). We agree with the concerns expressed by the Texas courts. Moreover, we note that a judgment creditor is most highly motivated to utilize the procedure employed below when the claims against it are meritorious—a troubling incentive structure.

APL cites several cases for the proposition that a chose in action is subject to execution, but none establishes that a district court may outright assign ordinary civil litigation to a judgment creditor. In Craft v. Craft, 757 So. 2d 571 (Fla. Dist. Ct. App. 2000), a case upon which the district court also relied, the judgment debtor's chose in

-10-

action was not assigned, but sold at a sheriff's auction. Id. at 572. The same is true for other cases cited by APL. See Applied Med. Techs. v. Eames, 44 P.3d 699, 700-01 (Utah 2002) (chose in action may be seized and sold at sheriff's sale); Woody's Olympia Lumber, Inc. v. Roney, 513 P.2d 849, 851 (Wash. 1973) (considering "whether or not an unliquidated claim sounding in tort may be levied upon and sold under execution" (emphasis added)).

The public auction procedure provides a key safeguard not present in this case: By permitting all comers to bid on a chose, a court allows the open market to determine a suit's value. See Citizens Nat'l Bank v. Dixieland Forest Prods., LLC, 935 So. 2d 1004, 1011 (Miss. 2006) ("For purposes of the execution and sale, the value of the lawsuits was set by the highest bid."). A public sale also provides a judgment debtor an opportunity to bid on their own suit, or convince a third party to bid an amount higher than the value of the judgment. We recognize that in many instances the judgment creditor will be the sole bidder at such sales, just as mortgagees frequently submit lone bids at foreclosure auctions. See Maranatha Faith Ctr., Inc. v. Colonial Trust Co., 904 So. 2d 1004, 1009 (Miss. 2006) ("[I]t is very likely that no third parties will ever become involved in these matters. All three parties involved in the instant appeal have an interest in purchasing the chose and thus rendering moot concerns regarding champerty."). Nonetheless, in all but the most unusual cases a public sale provides minimum procedural protections necessary

to ensure a judgment creditor is not granted a chose in action worth far more than the judgment, at least when the creditor has no intention of actually litigating the suit.[1]

The only cases cited by APL involving the outright involuntary transfer of a chose concerned the assignment of a claim for bad faith failure to settle the very case which led to the judgment being satisfied.  See Whitehead v. Van Leuven, 347 F. Supp. 505, 506 (D. Idaho 1972); O'Neill v. Gallant Ins. Co., 769 N.E.2d 100, 106 (Ill. App. Ct. 2002); Nicholson v. St. Anne Lanes, Inc., 512 N.E.2d 127, 128 (Ill. App. Ct. 1987).  These cases arose when a plaintiff successfully sued an insured defendant, then sought to satisfy that judgment by seizing the defendant's potential bad faith failure to settle claim against the defendant's insurer.  By their nature, such cases are not prone to the same type of inequities that may arise when an ordinary civil claim is seized because the maximum value of the chose is pre-ordained:  The judgment upon which the plaintiff executed forms a natural cap.  There is little risk that the judgment creditor will obtain multiple recovery because success on the seized chose by definition covers nothing more than the uncollected portion of the original judgment.  Further, these cases present a unique set of

---

[1] Another case cited by APL, Puzzo v. Ray, 386 So. 2d 49 (Fla. Dist. Ct. App. 1980), presented somewhat unusual facts.  Puzzo was storing in his warehouse goods he seized from a third party.  Id. at 49.  Ray later obtained a judgment against that same third party.  Id.  After the court permitted Ray to implead Puzzo, it determined that Puzzo converted the goods, and it ordered them sold with the proceeds to be used to satisfy Ray's judgment.  Id.  As an intermediate step in this analysis, the court held that the third party's interest in the goods constituted a chose in action for conversion and that a chose was subject to execution.  Id.  Because the goods themselves were seized and a sale was ordered, there was no danger that Ray would obtain a windfall.  Accordingly, to the extent that Puzzo can be construed as permitting the transfer of a chose (rather than a seizure of the goods), it represents the highly unusual case in which assignment of a chose does not risk overcompensation of the judgment creditor.

circumstances. The litigation that led to the judgment being executed was, for all intents and purposes, a contest between the judgment creditor (as plaintiff in the original litigation) and the insurer. In turn, it is the insurer's conduct in the original litigation that creates the bad faith claim. The judgment debtor (the defendant in the initial suit) is, for the most part, a mere bystander.

In light of the danger of windfall, we conclude that the district court abused its discretion in ordering an outright assignment of the Redmans' chose in action. The court could have subjected the chose to an execution sale, it could have imposed an equitable lien on any proceeds from the suit, or perhaps it could have selected an alternative remedy. But simply granting APL direct ownership of the Redmans' chose was impermissible.[2]

## IV

For the foregoing reasons, we **REVERSE** the district court's order, **VACATE** its assignment of the Redmans' chose in action, and **REMAND** for additional proceedings consistent with this order and judgment. APL's motion to dismiss is **DENIED**. The Redmans' motion to file their reply brief out of time is **GRANTED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge

---

[2] Because we reverse on the merits, we do not address the Redmans' due process argument.