**THE ESTATE OF MARTIN L. LUDINGTON, Appellant/Plaintiff**

**v.**

**YUSEF I. JABER, et al., Appellees/Defendants**

S. Ct. Civ. No. 2010-0036

Supreme Court of the Virgin Islands

March 22, 2011

Kevin A. Rames, Esq., Law Offices of K. A. Rames, P.C. St. Croix, USVI, *Attorney for Appellant.*

ROBERT A. WALDMAN, ESQ., Hamm Law Firm St. Croix, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(March 22, 2011)

CABRET, J. The Estate of Martin Ludington appeals the Superior Court's order denying the issuance of a writ of execution on Yusef I. Jaber's interest in a pending lawsuit against a third party. The Superior Court reasoned that Jaber's interest in the third party lawsuit was not executable personal property and thus not subject to a judicially directed sale. Virgin Islands law permits a judgment creditor to execute on the personal property, including things in action, of the judgment debtor. We hold, in line with the majority of courts, that a thing in action includes an interest in a pending lawsuit. Therefore, we reverse the trial court's order.

## I. FACTS AND PROCEDURAL HISTORY

This appeal stems from a stipulated judgment in the Estate's favor for $8,000,000.50 based on a note and mortgage owed by Jaber to the Estate. In the Estate's on-going efforts to liquidate Jaber's assets to meet the judgment, the Estate requested that the Superior Court sell at judicial sale Jaber's interest in *Jaber v. Abdallah*, No. SX-02-661 (Super. Ct. V.I. 2002) ("*Abdallah*"). In that case, Jaber is attempting to collect on a $1,100,000 promissory note allegedly owed to him by the defendant.

On March 23, 2010, the Superior Court issued an order denying the Estate's motion to sell Jaber's interest in the *Abdallah* litigation. The Superior Court determined that Jaber's interest in the action did not fall within the statutory definition of property subject to execution, and that there were no constitutionally required procedural guarantees for its sale. The only issue on appeal is whether the trial court erred in refusing to permit a judicial sale of Jaber's interest in the *Abdallah* litigation.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments,

final decrees or final orders of the Superior Court, or as otherwise provided by law." A denial of a post-judgment motion is a final order from which an appeal may rest. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483-83 (3d Cir. 1987) (exercising jurisdiction over a post-judgment denial of Rule 11 sanctions).

This Court exercises plenary review in examining the Superior Court's interpretation of Virgin Islands law. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Likewise, this Court exercises plenary review in examining the Superior Court's interpretation of the Constitution. *Gov't of the V.I. v. Davis*, 561 F.3d 159, 163, 51 V.I. 1179 (3d Cir. 2009).

## III. DISCUSSION

The Estate presents only one issue for this Court's consideration: whether a judgment debtor's interest in a pending lawsuit is constitutionally protected from seizure and sale at a marshal's sale. The Superior Court found that Jaber's interest in a pending lawsuit does not fall within the Virgin Islands Code's definition of personal property, holding instead that it was a "constitutionally protected property interest." (J.A. 8.) The Superior Court's constitutional characterization of Jaber's interest is correct, but the implications the court draws from that characterization, and its assertion that the interest is not included in the Virgin Islands Code, are erroneous.

### A. Jaber's Interest Is Personal Property Subject to Execution Under The Virgin Island's Code

To determine whether there is a process already in place for the sale of Jaber's interest, we must first determine whether Jaber's interest falls within the classes of property which can be executed upon in the Virgin Islands. Title 5, section 479 of the Virgin Islands Code controls the kind of personal property that can be executed upon in the Virgin Islands, noting first that *"[a]ll property . . .* of the judgment debtor shall be liable to an execution, except as in this section provided." V.I. CODE ANN. tit. 5 § 479 (1997) (emphasis added). The specific items listed as exempt from execution are necessary apparel, professional tools and apparatus by which the judgment debtor makes his living, and households

681

goods/furniture worth no more than $3,000 in aggregate.[1] *Id.* Although an interest in a pending lawsuit is not specifically excluded, we must ensure that it is "property" subject to execution under section 479.

 Property is defined in title 1, section 41 as "both real and personal property." 1 V.I.C. § 41 (1995). Personal property is defined in the same section as "money, goods, chattels, *things in action,* and evidence of debt." 1 V.I.C. § 41 (emphasis added). Things in action are generally synonymous with "choses in action."[2] BLACK'S LAW DICTIONARY 1617 (9th ed. 2009). A chose in action is, in turn, defined as:

> 1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one personowns but another person possesses, the owner being able to regain possession through a lawsuit.

*Id.* at 275. Since the debt itself and the right to bring an action to recover that debt both fall within "a thing in action," we see no reason why a plaintiff's filing a lawsuit would remove that right from being a thing in action. This reasoning is supported by the language of title 5, section 77 of the Virgin Islands Code, which sets out what kinds of damages may be recovered by an estate after the death of an individual. 5 V.I.C. § 77. That section discusses a thing in action as a pre-judgment interest in a lawsuit, thus setting out that the term "thing in action" covers any lawsuit not yet reduced to a judgment. *Id.* ("A thing in action . . . shall not abate . . . by reason of the death of the person injured. When the person entitled to maintain such an action dies *before judgment,* the damages recoverable for such injury may include . . . .") (emphasis added).

Although the issue of whether an interest in a pending lawsuit is executable property under title 5, section 479 is one of first impression for the Virgin Islands, the conclusion that it is property subject to execution

---

[1] Title 5 section 478 of the Virgin Islands Code also codifies a homestead exemption not relevant here.

[2] The terms "thing in action" and "chose in action" are synonymous and used interchangeably. "A 'chose in action' is an intangible, personal property right to bring an action to receive or recover a debt, money, or damages. A 'chose in action,' also known as a 'thing in action,' in its classic sense is a legal claim; that is, something on which an 'action'; or lawsuit might be founded." 73 C.J.S. *Property* § 5 (2010).

is in accord with the majority of modern case law that has addressed the question. *See, e.g., Craft v. Craft*, 757 So.2d 571, 572 (Fla. Dist. Ct. App. 2000) (permitting "chose in action" to include a pending lawsuit and to be sold at sheriff's sale); *Citizens Nat'l Bank v. Dixieland Forest Prods., LLC*, 935 So.2d 1004, 1007 n.5 (Miss. 2006) (same); *Applied Med. Techs. v. Eames*, 2002 UT 18, 44 P.3d 699, 700-01 (2002) (same); *Associated Ready Mix, Inc. v. Douglas*, 843 S.W.2d 758, 762 (Tex. App. 1992) (same); *see also Denham v. Farmers Ins., Co.*, 213 Cal. App. 3d 1061, 1068-71, 262 Cal. Rptr. 146 (1989) (holding the same for a Nevada statute almost identical to the Virgin Islands statute, but noting that California has a statutory construction that specifically refuses execution on interests reduced to causes of action). *But see Prodigy Ctrs./Atlanta v. T-C Assocs.*, 269 Ga. 522, 501 S.E.2d 209, 211 (1998) (holding a chose of action cannot be executed upon under Georgia law); *Lakeshore Motor Freight Co. v. Glenway Indus.*, 2 Ohio App. 3d 8, 2 Ohio B. 8, 440 N.E.2d 567, 570 (1981) (holding that a chose in action is not assignable under an Ohio equitable doctrine called a "creditor's bill"). Perhaps most importantly, however, the District Court of Alaska, interpreting an Alaskan statute identical to the Virgin Islands statute, found that a "thing in action" could be sold without the owner's consent at a judicially ordered sheriff's sale just like the one sought in this case. *Bergen v. F/V St. Patrick*, 686 F.Supp. 786, 788-89 (D. Alaska 1988). The Alaska District Court noted that this interpretation is nearly "universal." *Id.* at 788.

■ In light of the foregoing, we hold that Jaber's interest in the *Abdallah* litigation is property which can be sold at a marshal's sale pursuant to the normal statutory procedures for holding such a sale. *See* 5 V.I.C. §§ 256, 257, 265, 480, 484, 485 (1997).

## B. Virgin Islands Execution and Judicial Sale Procedures Do Not Violate Due Process

■ While arguing in support of the Superior Court's conclusion that a plaintiff's interest in an ongoing lawsuit to collect a debt was not subject to execution, Jaber contends that the label of "constitutionally protected property interest" creates a shield through which the Virgin Islands

execution procedures may not penetrate.[3] While the holding in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S. Ct. 1148, 1154, 71 L. Ed. 2d 265 (1982) establishes that an interest in a lawsuit is, in fact, a constitutionally protected property interest, that only means that the Due Process clause applies before a state or territory may deprive a plaintiff of his interest in an ongoing lawsuit. *See id.* Due process requires that "[a]dequate notice detailing the reasons for a proposed termination of a constitutionally protected liberty or property interest must be afforded to individuals prior to the deprivation." *Taylor v. Slick*, 178 F.3d 698, 703 (3d Cir. 1999) (internal quotation marks omitted) (quoting *Sullivan v. Barnett*, 139 F.3d 158, 172 (3d Cir. 1998)). That notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Procedural due process analyses, however, are "flexible and call[] for such procedural protections as the particular situation demands," therefore "[t]he level of notice to be given . . . depends on the interest at issue." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972)).

---

[3] The Estate asserts that we do not need to reach this issue based on the jurisprudential doctrine of avoiding constitutional questions. Essentially, the Estate urges us to refuse to decide whether the execution scheme in the Virgin Islands violates due process because the property in question falls within 1 V.I.C. § 41. That doctrine does not permit an appellate court to ignore constitutional challenges to the validity of a statute, but instead requires that the court determine that the statute's requirements have been fulfilled and, if not, whether that is an independent basis for reversal. If the statute itself gives grounds for reversal, or some procedural device to dispose of the case is available, then there is no need to question whether the statute is unconstitutional until it has been applied correctly and is correctly before the court. *See Hagans v. Lavine*, 415 U.S. 528, 541-49, 94 S. Ct. 1372, 1381-85, 39 L. Ed. 2d 577 (1974). The case primarily relied on by the Estate for this argument is a perfect example of this doctrine in action. *See Doe v. Pa. Bd. of Probation & Parole*, 513 F.3d 95, 102-11 (3d Cir. 2008) (exhausting all statutory and jurisdictional arguments to reverse trial court's application of Pennsylvania's Megan's Law before considering the constitutional validity of the challenged section). In this context, this doctrine would only have been implicated if this Court were to determine that a "thing in action" does not include an interest in a pending lawsuit, as then the statute would not give a basis for execution and the lower court's determination could have been affirmed without addressing the statute's validity. However, since we have determined that 5 V.I.C. § 479 includes such an action, we cannot ignore a facial attack to the constitutional validity of the statute.

Section 480 of title 5 incorporates the attachment procedure of section 256 in the event of a levy on personal property, such that either before-filing attachment or after-filing levy requires the same procedures. *See* 5 V.I.C. §§ 256, 480. The procedure of section 256 requires the marshal, when dealing with personal property not capable of manual delivery, as an intangible property right is not, to attach the property by "leaving a certified copy of the writ, and a notice specifying the property attached, with the person having possession of the same . . . ." 5 V.I.C. § 256(3). After that notice is served, notice must be provided to the public through newspaper publication and public posting in the office of the clerk of the court for no less than ten days prior to the sale. 5 V.I.C. § 484. Only after that time period has elapsed may the marshal sell the property through public auction. *See* 5 V.I.C. § 485.

 The only argument Jaber asserts to justify why these procedures are not sufficient to protect an interest in a pending litigation is a concern about devaluing the amount the lawsuit is worth. Jaber's argument, however, assumes that he has the means to accurately predict the value of his lawsuit. *See Staffend v. Lake Cent. Airlines, Inc.*, 47 F.R.D. 218, 220 (N.D. Ohio 1969) ("The value of any lawsuit for settlement purposes varies from time to time and often from day to day.") The value of a lawsuit, even a lawsuit for the collection of a debt with a specific figure attached, must be discounted by the risk assumed by the buyer that the suit will not ultimately be successful, that the expense to litigate the claim will reduce the net collection, or that, while the suit may reach judgment, the defendant in that case may not be able to pay on the judgment. *See Bergen*, 686 F. Supp. at 788-89; *see also United States v. Safety Car Heating & Lighting Co.*, 297 U.S. 88, 100, 56 S. Ct. 353, 359, 80 L. Ed. 500 (1936) ("The value of the chose in action, uncertain at the time of settlement, was even more uncertain in February, 1913. Unpredictable vicissitudes might reduce it to a nullity. The patent might be adjudged invalid. The infringer might become insolvent.") As the United States Court of Appeals for the Tenth Circuit recently pointed out when discussing the merits between a direct assignment of an interest to a judgment creditor versus a public judicial sale of that same interest:

> The public auction procedure provides a key safeguard not present in [a direct assignment]: By permitting all comers to bid on a chose, a court allows the open market to determine a suit's value. A public sale

also provides a judgment debtor an opportunity to bid on their own suit, or convince a third party to bid an amount higher than the value of the judgment. We recognize that in many instances the judgment creditor will be the sole bidder at such sales, just as mortgagees frequently submit lone bids at foreclosure auctions. Nonetheless, in all but the most unusual cases a public sale provides minimum procedural protections necessary to ensure a judgment creditor is not granted a chose in action worth far more than the judgment . . . .

*Amphibious Partners LLC*, 389 Fed. Appx. 762, 767 (10th Cir. 2010) (unpublished) (citations omitted). The public auction provides Jaber, and those situated like him, with an opportunity to have a specific valuation of his property interest given prior to judgment by competition in an open auction. *See id; see also Citizens Nat'l Bank v. Dixieland Forest Prods., LLC*, 935 So.2d 1004, 1010 (Miss. 2006) ("The plaintiffs argue a trial is necessary to determine the value of their claims against the bank, and an execution before a trial circumvents their rights . . . . The Legislature could have excepted choses in action from execution, but it did not . . . . As with any other personal property, a chose in action's value-for purposes of levy and execution-is determined at a sheriff's execution sale."). Moreover, Jaber does not differentiate why this concern is greater in the context of an interest in a pending litigation than in any other property interest that can be properly disposed of through marshal's sale.

　　██ Since personal service of the writ of execution is required and the debtor thereafter has ten days to object prior to the sale, *see* 5 V.I.C. §§ 256(3), 484, we hold that these statutes on their face provide an individual whose interest in a pending litigation is subject to judicially ordered marshal's sale adequate notice and sufficient time to make objections heard.[4] 5 V.I.C. § 484. Jaber's only argument, that a public auction runs the risk of devaluing the lawsuit, fails to persuade us to treat an interest in a lawsuit any different from any other personal property interest identified by statute for due process purposes. Therefore, we

---

[4] To the extent Jaber may be asserting an as-applied due process challenge to the deprivation, that claim is not ripe. No deprivation has occurred, no notice has been given pending it, and Jaber has not given this Court any reason to believe that the constitutionally acceptable procedures for marshal's sale of his interest will not be followed. *See E.B. v. Verniero*, 119 F.3d 1077, 1106 n.28 (3d Cir. 1997) (noting that a notice procedure cannot be challenged in an as-applied challenge until after it should have been utilized).

reverse the trial court's denial of a writ of execution and remand with instructions to issue the writ.

## IV. CONCLUSION

 An interest in a pending lawsuit is a "thing in action" under 1 V.I.C. § 41, and it is subject to the marshal sale procedures set forth in Chapter 43 of Title 5 of the Virgin Islands Code. On their faces, these statutory procedures comport with due process because they provide Jaber with ample notice and an opportunity to object prior to the sale. Therefore, we reverse the trial court and remand this case for action consistent with this opinion.