In re William P. BROSNAHAN, Jr., Debtor.

Mark S. Wallach, Trustee, Plaintiff,

v.

William P. Brosnahan, Jr.; Anne Laura Koessler Brosnahan; Keybank National Association; Anne Slubowski; Mary Brosnahan Wachter; William P. Brosnahan, III, Defendants.

Bankruptcy No. 02–14554B.

Adversary No. 04–1165B.

United States Bankruptcy Court, W.D. New York.

April 22, 2005.

Penney, Maier & Wallach, Mark S. Wallach, of counsel, Buffalo, NY, for Plaintiff/Respondent.

Nixon Peabody LLP, Gregory J. Mascitti, of counsel, Susan C. Roney, of counsel, Rochester, NY, for Defendant/Movant KeyBank National Association.

Hodgson Russ LLP, Peter Muth, of counsel, Buffalo, NY, for KeyBank National Association.

Arnold Weiss, Buffalo, NY, for Anne Laura Koessler Brosnahan, Anne Slubowski, Mary Brosnahan Wachter, & William P. Brosnahan III.

Harris Beach LLP, Patrick J. Maxwell, of counsel, Buffalo, NY, Successor Attorney for Anne Laura Koessler Brosnahan, Anne Slubowski, Mary Brosnahan Wachter, & William P. Brosnahan III.

Daniel H. Williams, III, Buffalo, NY, Pro Se.

CARL L. BUCKI, Bankruptcy Judge.

KeyBank National Association ("Key-

Bank") has filed two motions in this case.[1] The first seeks relief from the automatic stay, to allow KeyBank to foreclose an outstanding mortgage on the debtor's residence. The second motion asks to dismiss that portion of an adversary proceeding which seeks to avoid the KeyBank mortgage as a fraudulent conveyance under the New York Debtor and Creditor Law. With respect to both motions, the central issue is whether New York law allows the trustee to avoid a transfer despite the exchange of fair consideration.

In 1991, Daniel H. Williams, III ("Williams") commenced an action in New York State Supreme Court against William F. Brosnahan, Jr. ("Brosnahan"), to recover damages arising from an alleged breach of contract. In that proceeding, a jury rendered a verdict on January 30, 2001, in favor of Williams. This verdict ultimately resulted in the entry of a judgment against Brosnahan on April 30, 2001, in the amount of $1,173,158.10. During the hiatus between January 30th and April 30th of 2001, KeyBank extended a line of credit in the amount of $352,500 to Brosnahan and his wife. To secure this obligation, Brosnahan executed and delivered to KeyBank a mortgage on his residence at 137 Livingston Parkway in the town of Amherst, New York. Although Mrs. Brosnahan also occupied this property, title rested solely in the debtor's name. The mortgage was then recorded and filed in the office of the Erie County Clerk on March 20, 2001. Three business days later, KeyBank disbursed the entire line of credit on the instruction of Mr. and Mrs. Brosnahan.

Brosnahan filed a petition for relief under chapter 7 of the Bankruptcy Code on July 26, 2002. Shortly thereafter, Mark S. Wallach was duly appointed to serve as the trustee in this case. On July 1, 2004, he commenced the present adversary proceeding against KeyBank and various other defendants. With respect to KeyBank, the trustee states four causes of action. All are based upon the avoidance powers of 11 U.S.C. § 544(b)(1), which allows a trustee to avoid any transfer that an unsecured creditor could avoid under state law. Specifically, the trustee asserts that by reason of New York Debtor and Creditor Law §§ 273–a, 276 and 278, he can now enforce the rights of Williams to avoid the KeyBank mortgage.

On July 13, 2004, KeyBank filed a motion for relief from the automatic stay of 11 U.S.C. § 362, to allow it to foreclose its mortgage on Brosnahan's residence. The trustee objected to this request and in further response, cross moved to compel the debtor and his wife to pay rent and to vacate the property. At the initial hearing on KeyBank's motion, the court refused to grant immediate relief from the automatic stay, but instead adjourned argument, so that the motion and cross motion could be considered with an anticipated motion to dismiss the trustee's complaint. On August 30, 2004, KeyBank filed its motion under Bankruptcy Rule 7012 and FED. R. CIV. P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. The court then received argument on all of these motions at a hearing on September 13, 2004.

On a motion to dismiss for failure to state a claim, the movant must show that

---

1. With respect to these motions, this court previously issued a decision and order dated January 19, 2005. Within ten days thereafter, the trustee moved for reconsideration of a portion of the court's decision. The court then heard argument on the motion for reconsideration at a hearing on February 7, 2005. The present decision amends the prior decision of this court and incorporates the ruling on the motion for reconsideration.

based upon the complaint alone, the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, for purposes of the motion to dismiss, the court must accept the trustee's allegations as true. The essential issue is whether those allegations can possibly establish the causes of action that the trustee asserts.

In his complaint, the trustee alleges that on the day that the jury rendered its verdict in favor of Williams, Brosnahan owned his residence free and clear or any lien or encumbrance. Prior to the entry of judgment, however, Brosnahan undertook with the assistance of his wife to mortgage the property. To this end, on March 12, 2001, Brosnahan applied in writing to obtain from KeyBank a loan that would be secured by his residence. The trustee further alleges that Brosnahan informed Key-Bank about the impending entry of Williams' judgment; that Brosnahan intended to encumber the property for the purpose of making impossible the enforcement of that judgment from the equity in his residence; that Brosnahan and his wife planned to transfer the mortgage proceeds to their children; and that KeyBank either knew of the purpose and planned use of the mortgage, or failed to make inquiry about such purpose and use. Allegedly expediting the loan application, KeyBank agreed on March 19, 2001, to grant to Brosnahan a secured line of credit in the amount of $352,500, on condition that his wife would become a co-obligor. Mr. and Mrs. Brosnahan then executed the closing documents on March 20, and the mortgage was recorded that same day. The trustee also alleges that KeyBank chose not to require a delay in the disbursement of loan proceeds for the customary three business days during which Brosnahan could re-

scind the mortgage transaction under the Truth in Lending Act. *See* 15 U.S.C. § 1635. In accordance with Brosnahan's written instructions on March 21, Key-Bank funded the mortgage loan in full by wiring the entire line of credit to the children of Mr. and Mrs. Brosnahan. Further, the trustee contends that the mortgage was made "with the actual intent to hinder, delay and/or defraud at least one creditor;" that all of the defendants knew or should have known of this improper purpose; and that all of the defendants willingly participated in the loan transaction.

In New York, the remedy for a fraudulent conveyance is essentially defined by the following provision of Debtor and Creditor Law § 278(1):

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.

For purposes of this section, Debtor and Creditor Law § 270 defines conveyance to include a mortgage. Accordingly, pursuant to section 278, the trustee may generally avoid a mortgage that "is fraudulent as to a creditor," unless the mortgagee acquired its position "for fair consideration without knowledge of the fraud." In the present instance, the trustee alleges that KeyBank extended its loan with full knowledge of Brosnahan's purpose and intent.[2]

---

**2.** In the alternative, the trustee alleges that

KeyBank failed to make inquiry about the

To the extent that this allegation is correct, a power to avoid the mortgage will derive from its fraudulent character. For the definition of a fraudulent conveyance, the trustee may look to any of five other provisions of the Debtor and Creditor Law.

### First Cause of Action

In his first cause of action, the trustee asserts that the KeyBank mortgage is fraudulent under section 276 of the New York Debtor and Creditor Law. This section provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Thus, in paragraph 40 of the complaint, the trustee alleges that the mortgage was made "with the actual intent to hinder, delay and/or defraud at least one creditor of the Debtor." Specifically, the trustee maintains that the mortgage was given for the purpose and with the intent of hindering and delaying Williams from the collection of his judgment as against any equity in the real property of the debtor. The trustee contends, therefore, that Debtor and Creditor Law § 276 would allow Williams to avoid the mortgage. Pursuant to 11 U.S.C. § 544(b), the trustee proposes to exercise this same right of Williams.

In moving to dismiss the first cause of action, KeyBank presents four principal challenges to the trustee's claim for relief.

■ First, KeyBank contends that it merely extended a line of credit and that the only recipients of a transfer were Brosnahan's children, not KeyBank.

What KeyBank overlooks, however, is that it is itself the recipient of a mortgage. Section 270 of the Debtor and Creditor Law includes a mortgage within the definition of transfer. More specifically, a mortgage effects the transfer of rights in the mortgagor's real estate. Those transferred rights are property. Although the subsequent transfer of funds to Brosnahan's children might constitute a fraudulent conveyance, the alleged grant of a mortgage to KeyBank will also qualify as a conveyance within the meaning of Debtor and Creditor Law § 276.

■ Second, KeyBank argues that in order to establish a claim under Debtor and Creditor Law § 276, the trustee must show that "the thing disposed of must be of value, out of which the creditor could have realized a portion of his claim." *In re Montclair Homes, Inc.*, 200 B.R. 84, 96 (Bankr.E.D.N.Y.1996). *Accord, in re Kovler*, 249 B.R. 238, 243 (Bankr.S.D.N.Y. 2000). Noting that the trustee's rights derive through Williams, KeyBank contends that Williams held the position of a mere contingent creditor who could not recover his claim from the premises. In this argument, KeyBank overlooks the plain language of section 276. This section targets not only conveyances made with an intent to prevent recovery by an extant creditor, but "every conveyance made and every obligation incurred with the actual intent ... *to hinder, delay, or defraud either present or future creditors....*" At the time of the mortgage, Williams had already obtained a verdict in his favor and was awaiting entry of judgment. Thus, his claim was not then contingent. But even if it were contingent, section 276 recognizes as fraudulent any mortgage made with an

---

mortgage's purpose despite having a duty to do so. The court need not now decide whether proof of this allegation would counter the exception to section 278 when a transferee acquires its position without knowledge of the fraud. For purposes of the present motion to dismiss, it suffices that the trustee also alleges such actual knowledge.

actual intent to hinder or delay a future creditor. By reason of the mortgage, Key-Bank effected a conveyance of assets to which a prospective judgment could have attached. To the extent that this conveyance was made with an actual intent to hinder or delay enforcement of that prospective judgment, the trustee may now seek to avoid the mortgage as a fraudulent conveyance.

 Third, KeyBank asserts that on a balance sheet basis, the mortgage did not cause any disposition of property value. Except for the costs of closing, the transaction created a liability that would be offset by Brosnahan's receipt of loan proceeds. Although accurate, this observation cannot resolve the present dispute. Section 276 of the Debtor and Creditor Law applies to any conveyance made with an actual intent to hinder, delay or defraud, whether or not the debtor receives fair consideration in return. The Key-Bank loan may have had no impact on Brosnahan's balance sheet, but that fact does not speak to any of the elements of section 276. As defined by Debtor and Creditor Law § 270, conveyance includes a mortgage. Thus, it qualifies as the type of transaction which can be fraudulent under section 276. When a transaction is fraudulent under section 276, it may be avoided under Debtor and Creditor Law § 278. This later section does recognize a defense of fair consideration, but only when fair consideration is received "without knowledge of the fraud at the time of the conveyance." Here, the trustee's complaint adequately alleges that KeyBank received its mortgage with full knowledge of an intent to hinder, delay or defraud a creditor. Thus, even if the debtor received fair consideration from KeyBank, the complaint still states a proper cause of action.

Fourth, KeyBank argues that the trustee failed to allege with particularity the actual intent of KeyBank to hinder, delay, or defraud. To the contrary, this court finds that the complaint adequately specifies the allegedly fraudulent conduct. Bankruptcy Rule 7009 provides that Rule 9 of the Federal Rules of Civil Procedure shall apply in all adversary proceedings. Paragraph (b) of Rule 9 then states the applicable standard: "In all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Here, the complaint identifies the particular circumstances under which KeyBank granted the mortgage that the trustee now seeks to avoid. Rather, KeyBank's argument relates to a lack of specific allegation regarding knowledge and intent. Pursuant to FED. R. CIV. P. 9(b), however, the trustee needs only to aver generally these conditions of mind.

Unlike instances of constructive fraud, section 276 does not require a lack of fair consideration. KeyBank's present consternation seems to overlook the essence of section 276, namely that a creditor (and hence, the trustee) may avoid an otherwise valid mortgage given for fair consideration, if that mortgage is extended "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." Similarly, section 278 allows a defense of fair consideration, but only if KeyBank lacked knowledge of the fraud. A far more difficult question is whether the trustee will hereafter be able to prove the necessary intent and knowledge. For now, it suffices to conclude that the first cause of action adequately states a cause of action.

### Second Cause of Action

The second cause of action derives from the first. In the second cause of action, the trustee seeks to recover attorney's fees, presumably under authority of sec-

tion 276–a of the Debtor and Creditor Law. This section allows a trustee in bankruptcy to recover legal fees in an action to set aside a conveyance "where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." This requirement of proof essentially repeats the key elements of a claim under Debtor and Creditor Law § 276. In now moving to dismiss the second cause of action, KeyBank presumes dismissal of the first cause of action. Having denied that prior request, this court will similarly deny that portion of KeyBank's motion which seeks to dismiss the second cause of action.

### Third Cause of Action

The trustee's third cause of action essentially asserts that the KeyBank loan is fraudulent under section 273–a of the New York Debtor and Creditor Law. This section provides as follows:

> Every conveyance made *without fair consideration* when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

(emphasis added.) The complaint alleges that Brosnahan mortgaged his residence at a time when he was a defendant in the action by Williams for a money judgment and that Brosnahan has failed to satisfy that judgment. Unlike section 276 of the Debtor and Creditor Law, however, section 273–a has application only when the mortgage or other conveyance is made "without fair consideration." Here, KeyBank fully disbursed the proceeds of the loan. Indeed, paragraph 35 of the complaint specifically alleges that "KeyBank funded the mortgage loan three business days after its recording." By reason of its disbursement of funds, Keybank believes that it satisfies the defense of fair consideration. Its argument, however, overlooks the essential requirement of good faith as a component of fair consideration.

■ For purposes of the New York Fraudulent Conveyance Statute, Debtor and Creditor Law § 272 defines "fair consideration" as follows:

> Fair consideration is given for property, or obligation
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, *and in good faith,* property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received *in good faith* to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

The trustee contends that section 272 imposes a requirement for bilateral good faith. In other words, fair consideration would be exchanged only if both the transferor and transferee had acted in good faith. Such is not the controlling standard, however. After carefully examining the position of the Second Circuit on this issue, the Bankruptcy Appellate Panel concluded "that for constructively fraudulent transfer causes of action under Article 10 of the [Debtor and Creditor Law], it is only the good faith of the transferee that is to be considered." *In re Bennett Funding Group, Inc.,* 2000 WL 33711450, *5, 44 CBC 151, 157 (2nd Cir. BAP 2000). I agree with this conclusion. Section 272(a) states that fair consideration is given when in exchange for the transferred property, adequate other property is conveyed "in

good faith". By its language, this subdivision looks to the good faith of the transferee of the challenged transfer. Similarly, subdivision 272(b) recognizes fair consideration when a transferee receives property in good faith to secure an appropriate indebtedness. Thus, by its terms, the statute recognizes a defense to Debtor and Creditor Law § 273–a, in those instances where the transferee acts in good faith to provide the necessary level of fair consideration.

■ Although a transferee's unilateral good faith will satisfy the intent requirement for fair consideration, such good faith requires a demonstration of something more than an exchange of adequate value. This court believes that the Court of Appeals stated the applicable standard in its decision in *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (1995): where "a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme."

■ In the present instance, the complaint alleges that "KeyBank, with knowledge of the impending entry of the Williams judgment, either (a) knew of the improper purpose for the Debtor's mortgage application and planned use of the mortgage proceeds, or (b) failed to make inquiry as to the purpose for the mortgage application and planned used of the proceeds and had a duty to inquire." This court is not prepared at this time to rule whether a mere failure to make inquiry can ever suffice to establish a lack of good faith. Nonetheless, under the standard of *HBE Leasing Corp. v. Frank*, actual knowledge of a fraudulent purpose will contravene the notion of good faith on the part of KeyBank. Having alleged such knowledge, the complaint adequately states a claim upon which relief may be granted under section 273–a of the New York Debtor and Creditor Law.

### Fourth Cause of Action

The fourth cause of action derives from the first and third causes. In the fourth cause of action, the trustee seeks to recover any payments that the debtor made on account of the loan with KeyBank. To the extent that the underlying mortgage is a fraudulent conveyance, payments on account of that mortgage would be similarly suspect. Because both the first and third causes of action will survive Keybank's current motion, the fourth cause of action similarly states a claim upon which relief may be granted.

### Disposition of Property

■ Concurrently with presentment of its motion to dismiss various causes of action in the above referenced Adversary Proceeding, KeyBank has moved for relief from the automatic stay and to allow commencement of foreclosure proceedings. Meanwhile, the trustee has cross moved to compel the debtor and Mrs. Brosnahan to pay monthly rent to the bankruptcy estate. Alternatively, the trustee seeks an order directing that Brosnahan and his wife vacate the premises, so that the trustee might sell the premises pursuant to 11 U.S.C. § 363(f).

The KeyBank motion for stay relief is premised upon its possession of an interest in the mortgage. The existence of this interest, however, is the very matter at issue in the trustee's outstanding adversary proceeding. Similarly, the trustee has no right to collect rent or to evict, unless he establishes some paramount equity in the real property. While KeyBank and the trustee continue to dispute their respective rights under the mortgage as it may or may not be avoided or preserved, this court would act prematurely if it were

to allow either party unilaterally to foreclose, to evict, or to collect rent. Notably, the trustee's cross motion does not now seek authority to sell the property under 11 U.S.C. § 363(f). Nor have the parties made any joint application for enforcement of rights with respect to the property.

Until KeyBank and the trustee resolve their respective rights under the mortgage, neither party can independently demonstrate an underlying right to foreclose, to evict, or to collect rent. Accordingly, this court will deny both KeyBank's motion for stay relief and the trustee's cross motion. This denial, however, is without prejudice to a renewal of these requests after a determination of rights in the real property of the debtor.

### Conclusion

The court has considered all of the other arguments of KeyBank, and finds them to be without merit. For all of the reasons stated herein, this court will deny KeyBank's motion to dismiss. All other motions to dismiss this adversary proceeding are denied. The court will also deny both KeyBank's motion for stay relief and the trustee's cross motion, but without prejudice to a renewal of those motions at an appropriate time.

So ordered.