**REDEMPTION HOLDINGS, INC., Appellant/Plaintiff**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, BUREAU OF INTERNAL**
**REVENUE, and EGBERT HALL, Appellees/Defendants**

S. Ct. Civil No. 2015-0029

Supreme Court of the Virgin Islands

July 18, 2016

EDWARD L. BARRY, ESQ., Law Offices of Edward L. Barry, St. Croix, USVI, *Attorney for Appellant.*

VINCENT COLIANNI II, ESQ., Colianni & Colianni, St. Croix, USVI, *Attorney for Appellee Egbert Hall.*[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (July 18, 2016)

HODGE, *Chief Justice*. A creditor alleges that a debtor fraudulently conveyed his right to redeem certain foreclosed real property to a closely-held corporation. Because multiple well-recognized "badges of

---

[1] The Government declined to participate in this appeal, having advised the Court that it no longer has any interest in this case.

fraud" arise from the conduct and circumstances in this case, we conclude that the debtor acted with actual intent to defraud the creditor by purposefully putting property out of the creditor's reach, thereby causing the creditor harm. Therefore, we affirm the Superior Court's February 27, 2015 judgment setting aside the conveyance of the debtor's right of redemption.

## I. BACKGROUND

Redemption Holdings, Inc. ("RHI") initiated an action on April 24, 2009, against the Virgin Islands Bureau of Internal Revenue and Egbert Hall, seeking to establish free and clear title to real property located at 1 Estate Pearl, St. Croix (the "Property"). RHI and the Virgin Islands Bureau of Internal Revenue fully resolved their dispute on September 3, 2014, by entering into a consent judgment. That same day, a bench trial was held to resolve the remaining dispute between RHI and Hall.

On June 20, 2002, the Bank of Nova Scotia initiated an action against Yusuf Jaber, the mortgagee of the Property since 1999, to foreclose upon its lien against the Property. Jaber failed to defend against the foreclosure action, resulting in an entry of default. On April 28, 2003, the Superior Court entered a default judgment against Jaber. On October 24, 2003, the Bank purchased the Property at a Marshal's Sale for $249,057.52, which was confirmed by the Superior Court in a November 24, 2003 order. At this point, Jaber's only interest in the Property was his right of redemption, which he could exercise by tendering the full amount the Property sold for at the Marshal's Sale, plus costs, within six months of the date of confirmation of sale. *See* V.I. CODE ANN. tit. 5, § 496. In this case, Jaber had until May 24, 2004, to redeem the Property.

On May 21, 2004, the Articles of Incorporation for RHI were filed with the Lieutenant Governor's office. The next day, May 22, 2004, a meeting of the incorporators was held, where bylaws were adopted and officers and directors were appointed — Jaber was appointed both as president and treasurer — and 1,000 shares of corporate stock were issued to Jaber in consideration for payment of $1,000. Then, on May 24, 2004, Jaber assigned his right to redeem the Property to RHI and filed an affidavit with the Superior Court attesting to the assignment. This assignment was not recorded until almost five years later, on February 17, 2009. On the same day Jaber assigned his right to redeem to RHI, May 24, 2004, RHI redeemed the Property by tendering $254,843.84 — inclusive of interest

amounting to $5,786.32 — to the Marshal, who in turn issued a certificate of redemption dated May 25, 2004. The certificate of redemption was filed with the Office of the Recorder of Deeds on November 21, 2005. The Marshal's Deed was not issued to RHI until February 25, 2009, and it was recorded with the St. Croix Recorder of Deeds shortly thereafter, on March 10, 2009.

During this period, Jaber borrowed a substantial amount of money from Harvey R. Clapp, III, who eventually requested security from Jaber after Jaber failed to repay the loans. On November 21, 2005, Jaber sold all 1000 shares of his RHI stock to Clapp, with the condition that Jaber could repurchase the stock upon repayment of his debt, an option Jaber never exercised.

During this same period, Egbert Hall also made multiple personal loans to Jaber. The first loan Hall made to Jaber was for $400,000, evidenced by a one-year note issued on April 1, 2004. Hall issued a second one-year note in the amount of $200,000 to Jaber on May 14, 2004. Finally, Hall loaned Jaber an additional $70,000 on a short-term note made payable on June 30, 2004.[2] Hall did not require a security interest for any of the loans. On July 10, 2005, Hall and Jaber entered into a modification and extension agreement, extending the due date of the first two loans, on the condition that Jaber pay $100,000 by September 1, 2005, in fulfilment of the $70,000 short-term note, with prepaid interest. Jaber did not make the $100,000 payment, nor did he make any payments to Hall in fulfillment of his debt, as the bank would not honor the checks Jaber had issued to Hall due to insufficient funds. Eventually, in November 2007, Hall filed a debt collection action against Jaber. Jaber was personally served but did not appear, resulting in an entry of default. In an October 22, 2008 order, the Superior Court entered a default judgment against Jaber and awarded Hall $642,522 plus court costs. Hall recorded the default judgment on October 29, 2008. The parties agree that this judgment was never recorded against the Property specifically, but rather recorded in the Personal Lien Register.

---

[2] Hall also testified that he loaned Jaber another $55,000. (J.A. 162.) Besides Hall's testimony, however, there is no other indication that this $55,000 loan was made.

RHI[3] initiated this action against Hall in April 2009, and Hall answered on June 9, 2009. In an amended answer and counterclaim deemed filed on August 28, 2014, Hall counterclaimed against RHI, seeking a judgment in his favor for RHI's violation of the Virgin Islands Uniform Fraudulent Conveyance Act ("VIUFCA").[4] Days later, on September 3, 2014, a bench trial was held, and at its conclusion the Superior Court instructed the parties to submit proposed findings of fact and conclusions of law as to the issues addressed on the record. Both Hall and RHI complied with this order.

In a February 27, 2015 memorandum opinion and judgment, the Superior Court found that "Hall has met his burden in establishing that badges of fraud were present during and subsequent to the assignment of Jaber's right of redemption, which support a finding that Jaber had actual intent to defraud Hall as a creditor." (J.A. 17 (citing *Firmani v. Firmani*, 332 N.J. Super. 118, 752 A.2d 854, 857 (2000)).) The court determined that

> Hall's injury can be adduced from the fact that Hall did not have actual or constructive notice of the assignment until it was recorded on February 17, 2009, 112 days after his judgment was entered against Jaber. This prevented Hall from requesting a judgment lien on the property pursuant to 5 V.I.C. § 425(b) at the time the judgment was entered on October 22, 2008.

(J.A. 19.) Therefore, the Superior Court concluded that "Jaber's assignment of the right of redemption to RHI constituted a fraudulent conveyance as to Hall. . . . [and] that Hall may disregard the conveyance and execute upon the Property to the extent necessary to satisfy the Judgment obtained in Case No. SX-07-CV-534." (J.A. 19-20.) RHI timely filed a notice of appeal on March 20, 2015. *See* V.I.S.CT.R. 5(a)(1).

---

[3] At some point, RHI redeemed and took title to two other foreclosed properties once held by Jaber Properties, Inc., presumably increasing the value of RHI's stock.

[4] The VIUFCA — codified at title 28, chapter 9 of the Virgin Islands Code — was repealed and replaced with the Virgin Islands Uniform Fraudulent Transfer Act ("VIUFTA") — codified at title 28, § 171 *et seq.* — on November 15, 2011. *See* Act No. 7322, § 1 (V.I. Reg. Sess. 2011). However, because the VIUFCA was in effect at the time the transactions in this case occurred, and there is no indication that the VIUFTA was intended to be applied retroactively, the VIUFCA is controlling in this case. *Walters v. Walters*, 60 V.I. 768, 781 n.14 (V.I. 2014).

248

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Pursuant to the Revised Organic Act of 1954, this Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). The Superior Court's February 27, 2015 judgment constitutes a final appealable judgment because it resolved all issues between the parties. *See, e.g., Ottley v. Estate of Bell*, 61 V.I. 480, 487 (V.I. 2014); *Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 585 (V.I. 2014).

This Court engages in plenary review over all issues of statutory interpretation. *In re Estate of George*, 59 V.I. 913, 922 (V.I. 2013) (citing *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013)). We review findings of fact under a clearly erroneous standard. *Walters v. Parrott*, 58 V.I. 391, 411 (V.I. 2013). "Clear error exists if the finding is completely devoid of minimum evidentiary support or bears no rational relationship to the supporting evidence." *V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 366 (V.I. 2014) (citing *Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013)). The application of law to the facts is reviewed under a plenary standard. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

### B. Fraudulent Conveyance

At issue in this appeal is Hall's counterclaim against RHI seeking a judgment in his favor for RHI's alleged violation of the VIUFCA. Hall argues that RHI's acquisition of the Property was fraudulent. Specifically, Hall contends that Jaber acted with intent to defraud his creditors when he assigned his right to redeem the Property to RHI — a newly formed corporation in which he was the only shareholder. The trial court agreed, and set aside the conveyance of Jaber's right of redemption to RHI and ordered that Hall could execute on the Property to satisfy Hall's 2008 judgment against Jaber.

On appeal, RHI argues that there was insufficient evidence to prove either constructive or actual fraud. Although RHI dedicated a significant portion of its brief to discussing constructive fraud, at trial Hall advocated his position based on actual fraud, and the Superior Court held that Jaber

committed actual fraud. Therefore, we need only determine whether the Superior Court correctly concluded that the evidence presented amounted to actual fraud.

### 1. Fraudulent conveyances under the VIUFCA

■ The VIUFCA provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." 28 V.I.C. § 207.[5] When a conveyance is fraudulent, a creditor may "[h]ave the conveyance set aside . . . to the extent necessary to satisfy his claim" or the creditor may "[d]isregard the conveyance and attach or levy execution upon the property conveyed." 28 V.I.C. § 209(1)(a), (b). Due to a paucity of local case law discussing the VIUFCA, and because the purpose of the VIUFCA was "to make uniform the law of those jurisdictions which enact it," we look to other jurisdictions' case law for guidance on when a conveyance is fraudulent. 28 V.I.C. § 212; *Ottley v. Estate of Bell*, 61 V.I. 480, 494 n.10 (V.I. 2014) (explaining that "[w]hen statutes from other jurisdictions are substantially similar to a Virgin Islands statute, this Court may look for guidance at how that jurisdiction's courts have interpreted the similar statute" (citation omitted)); *see In re Innovative Commc'n Corp.*, 2011 Bankr. LEXIS 3040, at *182 (Bankr. D.V.I. 2011) (unpublished) (holding that "in the absence of interpretation by the courts of the Virgin Islands, we look to other case law interpreting and applying UFCA").

The National Conference of Commissioners on Uniform State Laws first promulgated the UFCA in 1918 and it was eventually adopted by 26 states and territories. Coleen Miller Barger, *Debtor-Creditor Relations — Arkansas Fraudulent Transfer Act*, 10 U. ARK. LITTLE ROCK L.J. 497, 497 (1988). In 1984, the UFCA was revised and renamed the UFTA to take into account the law's evolution, with special attention being paid to the Bankruptcy Code and the Uniform Commercial Code. *Id.* at 497-98; *see* AM. JUR. 2D *Bankruptcy* §§ 2290, 2291. The UFTA has been adopted by 43 states, the U.S. Virgin Islands, and the District of Columbia.

---

[5] Reference to any section of the VIUFCA herein is to the former, now repealed, statutes, which have since been replaced with the VIUFTA. *See supra* note 4.

Steven J. Boyajian, *Reconsidering the Uniformity of Uniform Fraudulent Transfer Act*, 33-APR AM. BANKR. INST. J. 28, 28 (April 2014). A review of the current codes in the 26 jurisdictions that had adopted the UFCA indicates that Maryland and New York are the only jurisdictions that still retain the UFCA. *See* MD. CODE ANN., COM. LAW § 15-207; N.Y. DEBT. & CRED. LAW § 276.

▮ When determining whether a debtor had actual intent to defraud a creditor, courts in both Maryland and New York evaluate the creditor's intention by looking to see if any "badges of fraud" were present in the conveyance. *See, e.g., In re Fischer*, 411 B.R. 247, 265 n.21 (Bankr. D. Md. 2009) (relying on the "generally recognized badges of fraud" under the Maryland UFCA); *Shelly v. Doe*, 249 A.D.2d 756, 671 N.Y.S.2d 803, 806 (1998) ("Because direct proof of actual intent is rare, creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent."); *Taberna Preferred Funding II, Ltd. v. Advance Realty Grp. LLC*, 45 Misc. 3d 1204(A), 5 N.Y.S.3d 330 (2014) (unpublished) (recognizing that "both New York and UFTA jurisdictions permit a claim for actual fraud to be based on factors or circumstances giving rise to an inference of intent, the so-called 'badges of fraud' " (citing *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 684 N.Y.S.2d 244, 247 (1999))).

▮ " 'Badges of Fraud' are circumstances so frequently attending fraudulent transfers that the inference of fraud arises from them." Robert Ridge & Ellen McGone, *A Practitioner's Guide to Pennsylvania's Newly Adopted Uniform Fraudulent Transfer Act*, 99 DICK. L. REV. 117, 120 (1994) (quoting *Profeta v. Lombardo*, 75 Ohio App. 3d 621, 600 N.E.2d 360, 364 (1991)); *In re Innovative Commc'n Corp.*, 2011 Bankr. LEXIS 3040, at \*121 ("Rarely will an individual admit actual intent to hinder, delay, or defraud; thus, courts consider a number of factors known as the 'badges of fraud.' " (citing *In re Valley Bldg. & Constr. Corp.*, 435 B.R. 276, 285 (Bankr. E.D. Pa. 2010))). Although the VIUFCA does not codify badges of fraud, unlike the VIUFTA,[6] badges of fraud have been used as markers of fraud by courts in the United States since the beginning of

---

[6] In fact, the UFTA attempted to codify the badges of fraud "that have been recognized by the courts in construing and applying the Statute of 13 Elizabeth and § 7 of the Uniform Fraudulent Conveyance Act." UNIF. FRAUDULENT TRANSFER ACT § 4 cmt. 5. "The Statute of 13 Elizabeth invalidated any transaction in which the debtor had actual intent 'to delay, hinder or defraud creditors' " and dates back to the reign of Queen Elizabeth I. Barger, 10 U. ARK. LITTLE ROCK L.J. at 498 (quoting 13 Eliz., ch. 5 (1570)). The badges of fraud codified in

251

American jurisprudence. *See Sexton v. Wheaton*, 21 U.S. 229, 250, 5 L. Ed. 603 (1823) (discussing badges of fraud). New York courts, operating under the UFCA, have identified the following badges of fraud:

> a close relationship between the parties to the conveyance; inadequacy of consideration received; retention of control of the property by the transferor; suspicious timing of the conveyance after the debt was incurred; the use of fictitious parties; information that the transferor was insolvent as a result of the conveyance; the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; the general chronology of the events and transactions under inquiry; a questionable transfer not in the usual course of business; and the secrecy, haste, or unusualness of the transaction.

---

VIUFTA are substantially similar to the badges of fraud utilized by courts in New York and Maryland, and are listed in 28 V.I.C. § 174(b):

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;
>
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) the debtor transferred the essential assets of the business to a lien or who transferred the assets to an insider of the debtor.

28 V.I.C. § 174(b). Importantly, this list is not all-inclusive, and courts are free to consider other factors as necessary in the cases before them. 28 V.I.C. § 174(b) (when "determining actual intent under subsection (a)(1), consideration may be given, *among other factors*, to whether [listing badges of fraud]" (emphasis added)); UNIF. FRAUDULENT TRANSFER ACT § 4 cmt. 5 (the list "is a nonexclusive catalogue of factors appropriate for consideration by the court in determining whether the debtor had an actual intent to hinder, delay, or defraud one or more creditors"); *see, e.g., Prairie Lakes Health Care Sys., Inc. v. Wookey*, 1998 SD 99, 583 N.W.2d 405, 411 (1998) ("In reviewing these elements, courts should consider all relevant particulars encompassing a questioned transaction and weigh the factors negating as well as suggesting fraud.").

*In re Vivaro Corp.*, 524 B.R. 536, 554 (Bankr. S.D.N.Y. 2015) (collecting cases). Similarly, Maryland courts consider the following "indicia of fraud" when determining whether fraudulent intent was present in a transfer: "the insolvency or indebtedness of transferor; lack of consideration for the conveyance; relationship between the transferor and the transferee; dependency or threat of litigation; secrecy or concealment; departure from the usual method of business; the transfer of the debtor's entire estate; the reservation of benefit to the transferor; and the retention by the debtor of possession of the property." *Attorney Grievance Comm'n v. Hekyong Pak*, 400 Md. 567, 929 A.2d 546, 560 (2007) (citing *Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 257 Md. 470, 263 A.2d 507, 510 (1970)). Applying the factors highlighted by the Maryland and New York courts for determining whether a transfer was made with fraudulent intent, we now evaluate the circumstances surrounding Jaber's transfer of his right of redemption to RHI.

### 2. Actual intent to defraud

The Superior Court found that Jaber's actions in this case satisfied multiple badges of fraud. First, it found that his transfer of the right of redemption to RHI was an insider transfer "because Jaber was the sole shareholder and President of RHI at the time of the assignment and redemption." *See United States v. Black*, 725 F. Supp. 2d 1279, 1291-92 (E.D. Wash. 2010) (finding an insider transfer where defendants created trusts for the purpose of acquiring title to property and then transferring the property to a corporation formed by defendants for the purpose of shielding their assets from tax collection); *Saez Assocs., Inc. v. Global Reader Servs.*, 2011-Ohio-5185, ¶ 14 (Ohio Ct. App. 2011) (unpublished) (considering transfer to a corporate insider as a badge of fraud). Next, the court found that Jaber maintained possession and control of the Property as the sole shareholder and president of RHI. Third, the Superior Court determined that the "transfer of the Property was concealed because the assignment was executed on May 24, 2004,"[7] but not recorded until February 17, 2009, after Hall's October 22, 2008 judgment against Jaber.

---

[7] RHI argues that this conclusion is factually incorrect because Jaber did not transfer the Property to RHI, rather, Jaber transferred his interest in redeeming the property to RHI. We agree. However, we find this erroneous conclusion insignificant to our review because the focus of this conclusion is not on what was transferred but that the transfer, albeit of the right to redeem the Property and not the Property itself, was concealed until after Jaber's interest in the Property had been conveyed to a third party.

Fourth, the Superior Court noted that Jaber assigned his right of redemption to RHI and RHI redeemed the Property shortly after Hall made three loans to Jaber amounting to $670,000. And finally, the Superior Court found that "Jaber absconded legal process in the Virgin Islands as judgment by default was granted in favor of Hall." Based on these established badges of fraud the Superior Court concluded that "Jaber had actual intent to defraud Hall as a creditor."

■■ We agree with the Superior Court and conclude that it correctly determined that there was sufficient evidence that Jaber conveyed his right of redemption to RHI with actual intent to defraud Hall. The assignment was an insider transaction and Jaber retained possession and control of the Property after assigning the right to redemption to RHI. *In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) (identifying as a badge of fraud under New York law as when debtor shifts his assets "to a corporation wholly controlled by him" (citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 218, 61 S. Ct. 904, 85 L. Ed. 1293 (1941))). The assignment was also made within the same timeframe that Hall made the loans to Jaber.

We also agree that the true ownership of the Property was concealed from creditors, but not for the reason given by the Superior Court. While it is true that Jaber did not record the assignment of his right of redemption until after Hall was awarded a judgment against him in 2009, it is also true that in 2005, RHI recorded its ownership interest in the Property. Thus, the world was on notice that RHI had redeemed the Property, and one could reasonably infer that Jaber, as the owner of the Property when it went into foreclosure, had assigned his right to redeem the Property to RHI so that it could validly redeem the Property. *See* 5 V.I.C. § 493 ("Property sold subject to redemption . . . may be redeemed by . . . [t]he judgment debtor, or his successor in interest . . . [or a] creditor having a lien by judgment, or mortgage, on any portion of the property"). What is more telling in this case is that RHI recorded its redemption of the Property *the same day* Jaber conveyed his stock in RHI to Clapp. Thus, during the time Jaber was the sole shareholder of RHI there was no notice that he still effectively had possession and ownership over the Property.[8]

---

[8] Jaber executed an affidavit announcing the assignment of his right of redemption to RHI, but he only filed the affidavit and RHI's subsequent certificate of redemption with the Superior Court.

From this, we infer that Jaber was attempting to conceal his interest in the Property.

RHI also argues that the Superior Court erred in determining that Jaber had absconded legal process in the Virgin Islands based solely on the fact that he defaulted in the lawsuit Hall brought against him. RHI notes there are valid reasons why a party may elect to default. RHI points out that in *Hall v. Jaber*, Super. Ct. Civ. No. 534/2007 (STX), Jaber was personally served but did not answer or otherwise appear. RHI argues that when a defendant permits a default judgment to be entered against him, he is only admitting to the facts as laid out in the complaint. Therefore, since there was no allegation of culpable intent in Hall's complaint, it cannot be inferred from his default that he intended to avoid paying Hall in this case.

■ We agree that when default is entered against a defendant, the defendant is admitting only to the allegations against him as alleged in the charging document. *See King v. Appleton*, 61 V.I. 339, 346 (V.I. 2014). Thus, because there was no allegation of avoiding legal process in Hall's complaint in *Hall v. Jaber*, Jaber's failure to appear is not prima facie evidence that he had absconded from the Territory. Nevertheless, Hall testified that after he filed suit Jaber disappeared without repaying the loans, and that he has not seen Jaber in the past five or six years. One can logically infer from this testimony, coupled with the default judgment, that Jaber's inaction demonstrates his intent to avoid repaying Hall.

We also consider it important that Jaber did not make a single valid payment to Hall on any of the three loans. More precisely, there is evidence that Jaber passed bad checks to Hall as "payment," which may constitute a crime in the Virgin Islands. *See* 14 V.I.C. § 835.[9] Even if

---

[9] Section 835 states:

 (a) Whoever makes, draws, utters, or delivers any check, draft or order for the payment of money

 (1) to the value of $100 or more upon any bank or other depository knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in, or credit with, such bank or other depositary for the payment of such check, draft or order, in full, upon its presentation, shall be fined not more than $1,000 or imprisoned not more than 5 years, or both;

 . . . .

 (b) The making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of the

Jaber's actions do not constitute criminal behavior, it is nevertheless further evidence tending to show that Jaber had actual intent to defraud Hall. When we take into consideration all of the above-cited evidence, we have no difficulty concluding that Jaber had actual intent to defraud Hall when he assigned his right of redemption to RHI.

### 3. Prejudice

■ Proving actual intent to defraud a creditor, standing alone, is not enough to be successful on a fraudulent conveyance claim. In order for a creditor to be successful in a claim against a debtor for fraudulent transfer, the creditor must also show that he was prejudiced by the transfer, and that the transfer put some property beyond the creditor's reach which otherwise would have served to fulfill the debt. *See, e.g., Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008) (holding that under New York law only creditors who are injured by a fraudulent transfer can bring a claim); *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 112 Cal. Rptr. 2d 802, 804-05 (2001) (holding no injury where plaintiff failed to prove that the value of the property exceeded the sum of existing encumbrances and senior liens); *Textron Financial Corp. v. Kruger*, 545 N.W.2d 880, 885 (Iowa Ct. App. 1996) ("A fraudulent conveyance will not be set aside unless complaining creditors can show they were prejudiced."). Thus, even where a conveyance is fraudulent, if the creditor suffered no injury then the creditor cannot be successful.

RHI argues that "there was no barrier preventing any judgment creditor of Jaber's from attaching and executing on the stock in any of his numerous Virgin Islands corporations, or from conducting a judgment debtor's examination (or similar procedure in aid of execution of a judgment) to ascertain and identify such corporate holdings." (Appellant's Br. 10-11.) In essence, RHI argues that Jaber did not put the

---

maker's or drawer's knowledge of insufficient funds in, or credit with, such bank or other depository, if such maker or drawer has not paid the drawee thereof the amount due thereon, together with all costs and protest fees, within 10 days after receiving notice that such check, draft or order has not been paid by the drawee.

14 V.I.C. § 835.

value of the Property out of Hall's reach when he assigned the right of redemption to RHI, but that he only changed the procedure by which Hall would have been able to collect payment based on how the property was owned. The controlling question in this case, as the Superior Court correctly recognized, is "whether the Property would have been subject to payment of Jaber's debt but was placed out of the reach of Hall due to the assignment." (J.A. 19); *see* 28 V.I.C. § 207.

■ "There is no question . . . that the setting aside of a fraudulent conveyance is an equitable remedy." *Tranberg v. Maidman*, 18 V.I. 556, 557 (D.V.I. 1981) (collecting cases). The timing of the transfer is not important, as the VIUFCA protects both current and future creditors from fraudulent conveyances. 28 V.I.C. § 207 (providing that the VIUFCA pertains to "[e]very conveyance made . . . with actual intent . . . to hinder, delay, or defraud either present or *future* creditors . . . .") (emphasis added); *see, e.g., In re Brosnahan*, 324 B.R. 199, 204-05 (Bankr. W.D.N.Y. 2005) (highlighting the fraudulent conveyance statute's application to future creditors); *In re Maryland Prop. Associates, Inc.*, 309 Fed. Appx. 737, 749 n.6 (4th Cir. 2009) (unpublished) (same). Jaber's assignment of his right to redeem the Property to RHI placed the right of redemption and the Property out of the reach of Jaber's creditors. As stated above, it is clear that Jaber had actual intent to defraud his creditors when he made the assignment. Jaber transferred the right to redeem the Property to a company completely owned by him and created specifically to redeem properties, in particular the Property at issue. He then provided that company with the funds to redeem the Property. Jaber's status as RHI's president, treasurer and sole shareholder clearly allowed Jaber to retain the use and enjoyment of the Property, while at the same time placing it out of reach of any current and future creditors. Had Jaber redeemed the property himself, and not through his company, the Property would have been available to creditors for execution. *See Estate of Ludington v. Jaber*, 54 V.I. 678, 681-82 (V.I. 2011) ("*[A]ll property* . . . of the judgment debtor shall be liable to an execution, except as in this section provided. . . . The specific items listed as exempt from execution are necessary apparel, professional tools and apparatus by which the judgment debtor makes his living, and households goods/furniture worth no more than $3,000 in aggregate." (quoting 5 V.I.C. § 479) (emphasis in original)); 1 V.I.C. § 41 (defining "property" to include "both real and personal property" and

defining "real property" to include "real estate, lands, tenements and hereditaments, corporeal or incorporeal").

Once Jaber assigned the right of redemption to RHI, he only owned the 1000 shares of RHI stock,[10] and RHI owned the right of redemption. Furthermore, the $254,843.84 that Jaber provided to RHI to redeem the Property was also lost to Jaber's creditors. Although the value of both the right of redemption and the money would have increased the value of RHI, and thus the value of Jaber's stock upon which a creditor could execute, we still believe that this transfer prejudiced Jaber's creditors. *See Estate of Ludington*, 54 V.I. at 681-82 (noting that in the Virgin Islands, all property with few exceptions may be executed upon); *Garcia v. Garcia*, 59 V.I. 758, 779 (V.I. 2013) (noting that shares of stock are personal property).

 Jaber solicited $670,000 from Hall and we infer that he gave a portion of this loan to RHI to redeem the Property. He then failed to record RHI's redemption of the Property. By not recording the redemption, he failed to put his creditors — at least to the extent that his creditors were aware that he had defaulted on the Property — on notice that he maintained some interest in the Property by way of his ownership of RHI. He kept these assets hidden until he determined it was necessary to use RHI to appease one of his creditors. Thus, even though Jaber's net worth may not have changed with the assignment of the right of

---

[10] The record contains no evidence that RHI purchased the right of redemption from Jaber or that it had any funds of its own with which to redeem the Property, besides the $1000 Jaber used to purchase the 1000 shares of RHI stock. Instead, Jaber conveyed his right of redemption to RHI, along with the $254,843.84 cash needed to redeem the Property. This further supports a finding of actual intent to defraud in this case. *See ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 952 N.E.2d 463, 474-75, 928 N.Y.S.2d 647 (2011) (holding that an allegation that assets were conveyed for no consideration may be considered when determining if the pleadings are sufficient to "allege an intent on the part of defendants to defraud plaintiffs" under New York's fraudulent conveyance statute (citing *Dempster v. Overview Equities, Inc.*, 4 A.D.3d 495, 773 N.Y.S.2d 71, 74 (2004))). Also, we note that there is nothing inherently fraudulent about an individual redeeming some property through a corporation; in fact, there are valid considerations for doing so, such as to avoid being personally held responsible for an injury occurring on the property. *See Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 785 (Bankr. W.D. La. 2013) (recognizing that the "distinction between corporation and shareholder insulates a corporation's shareholders from personal liability for the corporation's debts"). But looking at the factors in this case, we conclude that Jaber's creation of RHI and subsequent actions indicate his intent to defraud his creditors.

redemption to RHI, he purposefully attempted to hide some of his assets, making it difficult, if not impossible, for his creditors to find his ownership interest in RHI, and thus the Property. This information only became available once the Property's certificate of redemption was recorded, which was also the date Jaber conveyed his interest in RHI — and consequently the Property — to Clapp. *See contra*, *In re Old CarCo LLC*, 435 B.R. 169, 192 (Bankr. S.D.N.Y. 2010) (finding no fraudulent transfer where parent company sold assets of a subsidiary company that was in bankruptcy proceedings, where there was no evidence that it had tried to hide assets, the sale was part of an overall business plan, the company did not retain control over assets, and the transfers were neither secret nor hasty). Thus, RHI's redemption of the Property prejudiced Jaber's creditors because in order to complete that transaction, Jaber conveyed his right of redemption and over $250,000 to RHI, all the while hiding his interest in RHI.

Hall was awarded a creditor's judgment against Jaber personally in 2008. At that time, Jaber no longer had any interest in RHI, having conveyed his 1000 shares of stock to Clapp in 2005. Therefore, at the time Hall obtained his judgment, he could neither execute upon the Property nor the stock. It is of little help that Jaber eventually conveyed his RHI stock to Clapp as security for multiple loans. In so doing, Jaber undoubtedly was aware that other current and future creditors would not be paid. *See In re Manhattan Inv. Fund Ltd.*, 310 B.R. 500, 509-10 (Bankr. S.D.N.Y. 2002) (holding that "[w]hen a debtor operating a Ponzi scheme makes a payment with the knowledge that future creditors will not be paid, that payment is presumed to have been made with actual intent to hinder, delay or defraud other creditors — regardless of whether the payments were made to early investors" (citation omitted)). Thus, Jaber's conveyance of the right of redemption to RHI was fraudulent and may be set aside.[11]

---

[11] We are aware that Clapp purchased RHI from Jaber as security for the loans he made to Jaber, and that our decision to affirm the Superior Court's decision negatively affects Clapp's company. But even if Clapp was a bona fide purchaser of RHI, he purchased a company, not a property. In so doing, he took the risk that RHI would be unsuccessful and that the value of its stock, for whatever reason, might diminish. *See Burnet v. Clark*, 287 U.S. 410, 415, 53 S. Ct. 207, 77 L. Ed. 397 (1932) ("A corporation and its stockholders are generally to be treated as separate entities."); *Columbia Propane, L.P. v. Wisconsin Gas Co.*, 261 Wis. 2d 70,

## III. CONCLUSION

██ Jaber's conduct in assigning his right of redemption of the Property to a closely-held corporation of which he was the only shareholder, hiding his interest in the corporation, redeeming the Property through that corporation, and then ultimately conveying his shares in the corporation to another person, indicates his intent to put the Property out of the reach of Hall, as well as the reach of other creditors, and amounts to a fraudulent conveyance. Therefore, we affirm the Superior Court's February 27, 2015 judgment setting aside Jaber's conveyance of his right of redemption to RHI and permitting Hall to execute upon the Property to the extent necessary to satisfy the judgment obtained in Super. Ct. Civ. No. 534/2007.

---

661 N.W.2d 776, 786 (2003) ("In a stock sale, all undisclosed or contingent liabilities remain with the corporation." (citation omitted)).